UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALOMON BROTHERS GROUP INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GALAXY DIGITAL INC.,<br><br>Defendant. | **<u>COMPLAINT</u>** |

Plaintiff Salomon Brothers Group Inc. ("Salomon Brothers," "Salomon," or "Plaintiff"), by its attorneys, alleges as follows against Defendant Galaxy Digital Inc. ("Galaxy" or "Defendant"):

## STATEMENT OF CASE

1.      Salomon Brothers brings this action to remedy Galaxy's false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a). Galaxy and Salomon are competitors in the market for institutional digital-asset and blockchain-related financial services, and they pursue overlapping institutional customers and business opportunities. In an effort to discredit Salomon and bolster its own standing, Galaxy has disseminated false and misleading statements of fact about Salomon's business in a widely promoted podcast episode that Galaxy produced as part of the marketing of the firm and its research capabilities.

2.      In that podcast, a Galaxy research analyst falsely described Salomon Brothers as a "phantom company," "defunct," fraudulent, lacking legitimacy, and having no connection to the renowned Salomon Brothers investment bank of the past. These statements – presented as the findings of Galaxy's research department – are entirely baseless and false. Moreover, Galaxy knew they were false: prior to the podcast, Salomon provided Galaxy with extensive information

1

confirming Salomon's active operations, regulatory compliance, and the distinguished pedigree of Salomon's leadership. Galaxy's statements are all the more egregious given that Galaxy executives and research staff met with a senior Salomon executive for over two hours just one month before the false statements were made.

3.      By publishing and promoting these falsehoods to a broad audience of investors and market participants, Galaxy sought to undermine Salomon's reputation and divert business and goodwill away from Salomon (and toward Galaxy). The podcast episode functioned as a commercial advertisement for Galaxy's own expertise and services, while simultaneously disparaging a direct competitor. Upon information and belief, Galaxy's efforts to tarnish Salomon and to position itself as the superior provider of institutional digital-asset services began before the podcast episode and included communications and outreach to market participants in the same commercial ecosystem.

4.      Salomon brings this action under the Lanham Act to halt Galaxy's false and misleading statements, to correct the false impressions created in the marketplace, and to recover damages for the harm caused. Salomon seeks injunctive relief, including removal or retraction of the false statements, as well as monetary and other relief as provided by law.

**THE PARTIES**

5.      Salomon Brothers Group Inc. is a New York corporation with its headquarters and principal place of business in New York, New York. Salomon, through subsidiaries, is an investment banking firm that provides financial services in the digital asset, blockchain, and broader financial markets. Salomon was founded by a group of experienced Wall Street professionals, including alumni of the original Salomon Brothers investment bank, and it actively operates an investment-banking business in Manhattan.

6.      Galaxy Digital Inc. is, upon information and belief, a Delaware corporation with its principal place of business at 300 Vesey Street in New York, New York. Galaxy is a financial services and investment management firm focusing on digital assets and blockchain technology. Galaxy offers services including trading, asset management, research, and advisory services to institutional clients, and thus operates in the same or overlapping markets as Salomon.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121, because Plaintiff's claim arises under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

8.      This Court has personal jurisdiction over Defendant Galaxy because Galaxy's principal office is in New York, New York, and Galaxy conducts substantial business in this State and District. Additionally, the acts giving rise to the claim were purposefully directed at New York and have caused injury to Salomon in New York, where Salomon is located.

9.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) and (c). Galaxy resides in this District by virtue of its New York headquarters, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Galaxy's false promotional podcast was produced, at least in part, in New York and was directed to consumers and investors including those located in New York.

## FACTS RELEVANT TO ALL CLAIMS

**Salomon Brothers' Business and Reputation**

10.      Salomon is a duly formed and active New York corporation engaged in legitimate investment-banking operations. Salomon maintains a physical office in Manhattan and conducts business both in New York and internationally. Salomon is authorized to conduct securities

transactions through an affiliated broker-dealer that is registered with the appropriate regulatory authorities and in good standing.

11.     Salomon is not and has never been implicated in any fraud or unlawful activity. It has not been fined or penalized by any financial regulator, and it has never been found liable for fraud or any other misconduct. In short, there is no truth to any suggestion that Salomon "dissolved" due to fraud or was sanctioned by regulators – indeed, Salomon is an active enterprise that has been in continuous good standing since its founding.

12.     Salomon's leadership team consists of seasoned Wall Street professionals, including several alumni of the original Salomon Brothers firm of Wall Street fame. By acquiring rights to the Salomon Brothers name and leveraging the expertise of these former Salomon alumni, Plaintiff's business maintains a clear connection to the legacy of the historic Salomon Brothers. Salomon's pedigree and industry experience lend it substantial credibility in the financial community.

13.     Far from having a "shattered" reputation, Salomon Brothers' brand and goodwill are valuable business assets. Salomon has established ongoing client relationships and has obtained independent valuations confirming the strength and value of the Salomon Brothers brand. Salomon's revival of the storied Salomon Brothers name has been recognized in the industry, and the firm continues to build positive recognition through its services.

**Galaxy's False and Misleading Statements in its Podcast "Deep Dive"**

14.     In 2025, Galaxy's research division undertook a project to investigate a Bitcoin "dusting" campaign involving a client of Salomon Brothers. In connection with this project, Galaxy directly engaged with Salomon to gather information about Salomon's business, operations, and history. Over the course of several weeks in September 2025, Galaxy sent Salomon

more than two dozen written questions regarding Salomon's corporate lineage, activities, and legitimacy. Salomon cooperated, providing detailed written responses to Galaxy's inquiries.

15. On September 3, 2025, a senior Salomon Brothers executive met in person with Galaxy's research team for over two hours. This meeting included a member of the Galaxy executive team and multiple members of Galaxy's research department, including, upon information and belief, Galaxy's Head of Firmwide Research and Senior Research Analyst Zack Pokorny (the individual who would later speak on the podcast). During this in-depth meeting, and in follow-up communications, Salomon furnished Galaxy with documentation and information confirming, *inter alia*, that: (a) Salomon Brothers is an active New York-registered corporation (not a defunct or "phantom" entity); (b) Salomon is affiliated with a properly registered broker-dealer in New York; and (c) Salomon's management has significant Wall Street experience and includes former Salomon Brothers personnel, underscoring the firm's legitimacy and its connection to the legacy Salomon Brothers. Through these exchanges, Galaxy became fully aware of Salomon Brothers' legitimate corporate status, operations, and reputable pedigree.

16. On or about October 8, 2025, Galaxy published a written research report on its website entitled "The Great Bitcoin Dusting: A 'Salomon Brothers' Client Tries to Claim Dormant Wallets." This report detailed a Bitcoin project involving Salomon's client. Notably, in that report Galaxy acknowledged certain facts about Salomon Brothers, including Salomon's status as a New York–registered corporation with an office address and identified management and affiliates. Salomon did not object to the content of the written report; indeed, Salomon's representatives thanked Galaxy for its work and accurate description of the dusting initiative.

17. Although Galaxy publicly admitted in its research report that Salomon was a registered corporation, upon information and belief, in private discussions with Galaxy's clients,

Galaxy provided false and misleading statements about Salomon's legitimacy, history, and reputation. On or about October 7, 2025, one day ahead of Galaxy publicly releasing its research report, Salomon received an email from a prospective institutional counterparty indicating it was ceasing consideration of a transaction proposed by Salomon. Upon information and belief, that prospective counterparty had a business relationship with Galaxy and was operating in the same institutional digital-asset ecosystem in which Galaxy and Salomon compete.

18.     Following the publication of the written report, Galaxy produced, and distributed via, inter alia, its website, a promotional podcast episode as a further "deep dive" into the dusting project and Salomon's role. On or about October 18, 2025, Galaxy disseminated an episode of a Bitcoin-focused podcast (the "Episode") in which Galaxy's employee, Senior Research Analyst Zack Pokorny, appeared as the featured speaker. In the Episode and related promotional materials, Mr. Pokorny was explicitly identified as a member of Galaxy Digital's research team, speaking in his professional capacity on behalf of Galaxy. Galaxy marketed this Episode as the product of its own research and expertise, thereby using the podcast as a vehicle to promote Galaxy's services and reputation in the digital asset industry.

19.     Despite knowing the true facts, Galaxy (through its researcher Pokorny) made or endorsed numerous false and misleading statements of fact about Salomon Brothers during the Episode. In particular, Mr. Pokorny and the podcast host conveyed the following false assertions about Salomon (collectively, the "False Statements"):

- "Salomon Brothers is a phantom company."

- "Salomon Brothers basically dissolved because they were implicated in some sort of fraud, right?" (to which Mr. Pokorny responded, "Yeah, that is my understanding.")

- "Salomon Brothers were like fined and penalized along some line."

- "They did get into some trouble or a few traders at the firm got into some trouble."

- Salomon Brothers has "no connection to the old one," meaning no connection to the historic Salomon Brothers investment bank.

- Salomon Brothers' reputation is "completely shattered."

- Salomon Brothers does not have even "a veneer of legitimacy."

- Salomon Brothers is "defunct."

20.    Every one of the above statements is false, both in isolation and in the context in which it was made. In truth, as Galaxy well knew: (a) Salomon Brothers is a real, ongoing company – a duly incorporated New York business with an active corporate status and a physical office in Manhattan (it is not a "phantom" or "defunct" company); (b) Salomon has never been implicated in any fraud and has never been fined or penalized by any regulatory authority (Galaxy had no basis to suggest that Salomon "dissolved" due to fraud or was ever "fined and penalized"); (c) Salomon operates with full legitimacy and regulatory compliance through its registered broker-dealer affiliate; (d) Salomon's reputation is far from "shattered" – rather, Salomon enjoys ongoing business relationships and a valuable reputation in the industry; and (e) Salomon does have a meaningful connection to the historic Salomon Brothers firm, in that its founders and leadership include alumni of the original firm and they have consciously revived the Salomon Brothers name and legacy in building Plaintiff's business (thus, it is false to claim Salomon has "no connection to the old one"). In fact, alumni of the original Salomon Brothers are employees and advisors to Salomon, are listed on the Salomon website, and participate in the Salomon LinkedIn page. These false statements were not presented as mere opinions or hyperbole, but as assertions of fact about Salomon's corporate status, history, legitimacy, and reputation.

21.    To the extent any of the foregoing statements are characterized as opinion or rhetorical commentary rather than purely factual assertions, they are nonetheless misleading because, in context, a reasonable listener would understand them as conveying undisclosed, verifiable facts about Salomon. The statements were made by a Galaxy research analyst speaking in a professional capacity and presented as the product of Galaxy's purported investigation, not as casual banter or subjective opinion, and therefore would reasonably be understood as factual representations concerning Salomon's legitimacy, history, and reputation.

22.    Galaxy had no reasonable basis – and indeed no honest belief – in the truth of the False Statements it published about Salomon. To the contrary, Galaxy had obtained detailed information directly from Salomon just weeks earlier confirming that Salomon was active, legitimate, and run by reputable professionals. Galaxy's own written research report (published October 8, 2025) referenced many of these same facts. Thus, at the time of the Episode, Galaxy unquestionably knew that Salomon Brothers was not a fraudulent or non-existent company. Galaxy and its researcher Mr. Pokorny nevertheless chose to publish these egregiously false characterizations of Salomon, in willful disregard of the truth, in order to cast doubt on Salomon's legitimacy.

23.    The false statements were disseminated by Galaxy in a context that served as commercial advertising or promotion. In contrast to Galaxy's attacks on Salomon, Galaxy used the Episode to promote itself as a "reputable public company." The Episode was distributed on major podcast platforms including iHeartRadio, Spotify, Apple Podcasts, and others, and Galaxy heavily promoted the Episode through social media and Galaxy-branded channels. The Episode reached a large, specialized audience of digital-asset investors and financial market participants –

exactly the community of potential clients, investors, and partners that Salomon (and Galaxy) target in their businesses.

24.     Galaxy's production of the "deep dive" podcast was economically motivated. By showcasing its ability to "investigate" complex on-chain data, Galaxy sought to signal to institutional investors that it possesses superior capabilities compared to competitors like Salomon. The Episode also concluded with a call-to-action encouraging listeners to follow Galaxy's research analysts responsible for the Episode, directing listeners to Galaxy-affiliated channels through which Galaxy regularly disseminates research and market analysis as part of its institutional services offering.

25.     By presenting the content as part of Galaxy's official research output and by featuring a Galaxy representative to enhance Galaxy's credibility with the audience, the Episode constituted an advertisement for Galaxy's expertise and services. At the same time, the Episode's false claims about Salomon were intended to, and likely did, influence this audience's perceptions of Salomon in a negative way. In other words, Galaxy used the Episode as a promotional vehicle to elevate itself while inflicting reputational harm on a competitor. These false statements were made in interstate commerce via the internet and podcast distribution networks, which reach listeners nationwide and internationally.

26.     Galaxy's false and disparaging statements have caused and continue to cause substantial injury to Salomon. The statements attack the core of Salomon's business integrity – falsely labeling the company as a sham and implying involvement in fraud – which naturally deters investors and counterparties from doing business with Salomon. In the wake of the Episode's publication, Salomon has suffered actual damage, including harm to its goodwill and loss of business opportunities. For example, on information and belief, Salomon lost at least one

prospective business opportunity in temporal proximity to Galaxy's October 8 research report and in circumstances suggesting Galaxy's competitive influence in that same marketplace. Salomon's customer inquiries and business leads have also declined following the widespread dissemination of the False Statements.

27.    Unless Galaxy's false advertising is enjoined, the damage to Salomon's reputation will continue, and, therefore, Salomon will continue to lose potential clients or collaborations as a direct result of Galaxy's misleading statements. Salomon has also incurred expenses in an effort to mitigate and counteract the false impressions created by Galaxy. The injury to Salomon's reputation and goodwill is, moreover, irreparable and cannot be fully measured in dollar terms, warranting injunctive relief.

28.    After Galaxy disseminated the False Statements, Salomon (through counsel) demanded that Galaxy retract and correct its false and misleading statements and take appropriate remedial action. Galaxy refused and has continued to allow the False Statements to remain publicly available and to be disseminated, further compounding the harm to Salomon.

## FIRST CLAIM FOR RELIEF
### Violation of Lanham Act § 43(a)(1)(B) – False Descriptions (15 U.S.C. § 1125(a)(1)(B))

29.    Plaintiff Salomon Brothers repeats and realleges each of the foregoing paragraphs as if fully set forth hereunder this claim.

30.    Galaxy, in connection with the commercial promotion of its services, made false and/or misleading statements of fact about Plaintiff's business, goods, and commercial activities. Specifically, Galaxy published and disseminated the False Statements identified above, falsely describing Salomon Brothers as a "phantom" defunct company engaged in or tainted by fraud and lacking legitimacy. These statements were false on their face and/or misleading in context, and were material misrepresentations of fact regarding Salomon and its services.

10

31.     Galaxy's false statements were made in "commercial advertising or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B). Galaxy's statements were disseminated in a public medium (an internet podcast and associated promotional posts) to a broad segment of the relevant industry, and were intended to influence customers and investors in that industry. Galaxy made these statements as part of a promotional campaign showcasing Galaxy's own research services, and the statements directly targeted a competitor (Salomon) to Galaxy's commercial advantage. The Episode and related social media promotion constituted commercial speech by Galaxy, made for the purpose of influencing consumers' opinions and decisions regarding the parties' services.

32.     Galaxy's false and misleading statements actually deceived or had the tendency to deceive a substantial segment of their audience. The False Statements were factual in nature and were presented by Galaxy in an authoritative manner (as research "findings" after an "investigation"), such that listeners were likely to accept them as true. Members of the intended audience (institutional investors and market participants) who heard or learned of these statements would be deceived into doubting Salomon's legitimacy and solvency. Indeed, given the specificity of the false claims (asserting Salomon was penalized for fraud, not a real company, etc.), the average listener would reasonably believe these assertions to be true absent corrective information.

33.     The deception caused by Galaxy's statements was and is material. The misrepresentations go to the core characteristics and qualities of Salomon's business – its very existence, lawfulness, and reputation. Such information is inherently important to investors, clients, and partners when choosing whether to do business with a firm. By falsely portraying Salomon as non-existent, fraudulent, or disreputable, Galaxy's statements were naturally likely to

influence the economic decisions of the audience (for example, causing potential clients to refrain from engaging Salomon, or causing industry partners to avoid associating with Salomon).

34.    Galaxy's false statements were distributed in interstate commerce. The Episode was published online via globally accessible podcast platforms and social media networks, which transmit content across state lines and internationally. Galaxy's promotional activities thus placed the false statements into interstate commerce.

35.    As a direct and proximate result of Galaxy's false advertising, Salomon Brothers has suffered, and is likely to continue to suffer, injury to its business, reputation, and goodwill. The false statements have caused actual damage in the form of lost business opportunities and a decline in customer interest, and they have required Salomon to spend resources to counteract the misinformation. Salomon is also likely to sustain future losses if Galaxy's conduct is not enjoined, as the false cloud cast over Salomon's legitimacy will otherwise persist in the minds of consumers. The harm to Salomon's business reputation and customer trust constitutes an irreparable injury for which Salomon has no adequate remedy at law.

36.    Galaxy's actions were willful, deliberate, and in bad faith. Galaxy knew or at least recklessly disregarded the falsity of the statements it made about Salomon, given that Galaxy's own prior research and communications with Salomon confirmed the truth. Based on the forgoing facts, it is clear that Galaxy intended to deceive the consuming public and to gain a competitive edge by denigrating Salomon. Accordingly, this is an "exceptional case" within the meaning of 15 U.S.C. § 1117(a), entitling Salomon to recover enhanced damages and attorneys' fees.

37.    By reason of the foregoing conduct, Galaxy has violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by using false or misleading descriptions and

representations of fact in commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Salomon's goods and services.

38.     Unless enjoined by this Court, Galaxy's false advertising and misleading statements will continue to cause irreparable harm to Salomon. Salomon is therefore entitled to injunctive relief under 15 U.S.C. § 1116(a) restraining Galaxy from continuing or repeating the false and defamatory assertions, and requiring removal or correction of existing false statements, in order to prevent further deception of the public.

## PRAYER FOR RELIEF

39.     **WHEREFORE**, Plaintiff Salomon Brothers Group Inc. respectfully requests that the Court enter judgment in its favor and against Defendant Galaxy Digital Inc., and grant the following relief:

(a) A permanent injunction restraining Galaxy, its officers, agents, employees, and all persons acting in concert with it, from publishing or disseminating the False Statements identified above, or any other false or misleading statements about Salomon or its business. Such injunction shall further require Galaxy to immediately remove or cause the removal of the False Statements from any websites, podcasts, social media accounts, or other media under Galaxy's control, including but not limited to the removal of the October 18, 2025 podcast Episode (and any clips or promotional postings derived from it) from all platforms. Additionally, Galaxy should be compelled to issue corrective statements or retractions in a form approved by the Court, notifying the relevant public that the statements about Salomon were false and disavowing those statements.

(b) An award of damages in an amount to be proven at trial, including: (i) Salomon's actual damages, such as lost profits, loss of business value, and costs incurred or to be incurred for corrective advertising and other remedial efforts necessary to counteract the effects of Galaxy's

false advertising, suffered as a result of Galaxy's false advertising; (ii) Galaxy's profits attributable to the false advertising, to be disgorged to Plaintiff pursuant to 15 U.S.C. § 1117(a); and (iii) treble damages and/or enhanced damages as allowed by law on account of Galaxy's knowing and willful conduct.

(c) An award of Plaintiff's reasonable attorneys' fees, costs, and expenses incurred in this action, as authorized by 15 U.S.C. § 1117(a) (Lanham Act exceptional case) and any other applicable law.

(d) An award of prejudgment interest and post-judgment interest on all monetary awards, at the highest rate permitted by law, from the date the injury occurred until the date of payment of the judgment.

(e) Such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Please take notice that Salomon Brothers hereby demands trial by jury for all issues so triable.

Dated: January 15, 2026     Respectfully Submitted:
   Brooklyn, New York

          **LEWIS & LIN LLC**

        By: _/s/ David D. Lin_____
         David D. Lin, Esq.
         Michael D. Cilento, Esq.
         77 Sands Street, 6th Floor
         Brooklyn, New York, 11201
         Tel: (718) 243-9323
         Fax (718) 243-9326
         David@iLawco.com
         Michael@iLawco.com

        *Attorneys for Salomon Brothers Group Inc.*