**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SALOMON BROTHERS GROUP INC., | ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | No. 1:26-cv-00369 |
| GALAXY DIGITAL INC., | ) ) | ORAL ARGUMENT REQUESTED |
| *Defendant.* | ) ) ) | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>**
**<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 8

I.      Motion to Dismiss ................................................................................................. 8

II.     The Lanham Act ................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.      The Complaint Fails To Adequately Allege That The Podcast Statements Were
        Made In Commercial Advertising Or Promotion ................................................. 11

        A.      The Complaint Fails To Adequately Allege That Pokorny's Speech Was
                Commercial or Made To Influence Consumers ....................................... 12

        B.      The Complaint Fails To Adequately Allege Dissemination to the
                Relevant Purchasing Public ................................................................... 15

II.     The Statements Cited In The Complaint Are Either Irrelevant To Lanham Act
        Liability Or Protected Opinion .......................................................................... 18

        A.      Many of the Statements Cited in the Complaint Either Are Not About
                Plaintiff or Were Not Made by Galaxy .................................................. 18

        B.      The Statements Cited in the Complaint Are Non-Actionable Opinions ............... 20

III.    Salomon Has Not Plausibly Alleged Injury Caused By Galaxy ...................................... 25

IV.     The Court Should Dismiss With Prejudice And Award Fees And Damages
        Under The Lanham Act And New York's Anti-SLAPP Law ........................................... 27

CONCLUSION .................................................................................................................. 29

**TABLE OF AUTHORITIES**

**Cases**

*4 Pillar Dynasty LLC v. New York & Co.*,
  933 F.3d 202 (2d Cir. 2019) ................................................................................. 28

*Abbas v. Foreign Pol'y Grp.*,
  783 F.3d 1328 (D.C. Cir. 2015) ............................................................................. 23

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
  499 F.2d 232 (2d Cir. 1974) ................................................................................. 11

*Anthem Sports v. Under the Weather*,
  320 F.Supp.3d 399 (D. Conn. 2018) ................................................................. 24, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 8

*Avalos v. IAC/Interactivecorp.*,
  2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ........................................................ 26

*Biro v. Conde Nast*,
  883 F.Supp.2d 441 (S.D.N.Y. 2012) ...................................................................... 3

*Bobulinski v. Tarlov*,
  758 F.Supp.3d 166 (S.D.N.Y. 2024) ..................................................................... 28

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) ............................................................................................. 12

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003) ........................................................................ 13, 14, 20

*Casper Sleep v. Nectar Brand*,
  2020 WL 5659581 (S.D.N.Y. Sep. 23, 2020) ......................................................... 25

*Chavis v. Chappius*,
  618 F.3d 162 (2d Cir. 2010) ................................................................................. 8

*City of Cincinnati v. Discovery Network*,
  507 U.S. 410 (1993) ........................................................................................... 12

*Conte v. Newsday*,
  2013 WL 978711 (E.D.N.Y. Mar. 13, 2013) .......................................................... 24

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ............................................................................... 27

*Croton Watch Co. v. Nat'l Jeweler Mag.*,
   2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) ............................................................. 14, 17, 27

*Davis v. Avvo*,
   345 F.Supp.3d 534 (S.D.N.Y. 2018) ............................................................... 9, 25, 26

*De Ford v. Koutoulas*,
   2025 WL 2494224 (M.D. Fla. Aug. 29, 2025) ............................................................. 13

*Dfinity Found. v. N.Y. Times Co.*,
   702 F.Supp.3d 167 (S.D.N.Y. 2023) ............................................................... 9, 22, 23

*Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*,
   2004 WL 1574645 (S.D.N.Y. July 13, 2004) ............................................................. 14

*Enigma Software Grp. USA v. Bleeping Comput. LLC*,
   194 F.Supp.3d 263 (S.D.N.Y. 2016) ............................................................... 12, 16

*EventMedia Int'l v. Time, Inc. Mag. Co.*,
   1992 WL 321629 (S.D.N.Y. Oct. 26, 1992) ............................................................. 13

*Fashion Boutique of Short Hills v. Fendi USA*,
   314 F.3d 48 (2d Cir. 2002) ............................................................... 11, 15, 16

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ............................................................... 9, 17

*G & F Licensing Corp. v. Field & Stream Licenses Co.*,
   2010 WL 2900203 (S.D.N.Y. July 16, 2010) ............................................................. 18

*Gallagher v. Philipps*,
   563 F.Supp.3d 1048 (S.D. Cal. 2021) ............................................................. 14

*Ganske v. Mensch*,
   480 F.Supp.3d 542 (S.D.N.Y. 2020) ............................................................. 3

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
   2019 WL 1768965 (S.D.N.Y. Apr. 4, 2019) ............................................................. 12

*Geomatrix, LLC v. NSF Int'l*,
   82 F.4th 466 (6th Cir. 2023) ............................................................. 27

*Gifford v. U.S. Green Bldg. Council*,
   2011 WL 4343815 (S.D.N.Y. Aug. 16, 2011) ............................................................. 26

*Gmurzynska v. Hutton*,
   355 F.3d 206 (2d Cir. 2004) ............................................................. *passim*

iii

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
859 F.Supp. 1521 (S.D.N.Y. 1994) ................................................................. 12, 14, 15

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*,
905 F.Supp. 169 (S.D.N.Y. 1995) ................................................................................ 17

*Gray v. Amazon.com*,
2021 WL 1909737 (N.D.N.Y. May 12, 2021) ............................................................. 27

*Groden v. Random House*,
1994 WL 455555 (S.D.N.Y. Aug. 23, 1994) ............................................................... 22

*Groden v. Random House*,
61 F.3d 1045 (2d Cir. 1995) ................................................................................ 11, 13, 20

*Heilbut v. Cassava Scis.*,
778 F.Supp.3d 551 (S.D.N.Y. 2025) ........................................................................... 28

*Int'l Code Council v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) .......................................................................................... 9, 22

*Levinsky's v. Wal-Mart Stores*,
127 F.3d 122 (1st Cir. 1997) ....................................................................................... 22

*Lexmark Int'l v. Static Control Components*,
572 U.S. 118 (2014) ..................................................................................................... 25

*Licata & Co. Inc. v. Goldberg*,
812 F.Supp.403 (S.D.N.Y. 1993) .......................................................................... 22, 25

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ........................................................................................... 19

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
306 F.Supp.3d 629 (S.D.N.Y. 2018) ............................................................................. 8

*McCabe v. Rattiner*,
814 F.2d 839 (1st Cir. 1987) ....................................................................................... 22

*McKenzie v. Artists Rts. Soc'y*,
757 F.Supp.3d 427 (S.D.N.Y. 2024) ........................................................................... 26

*Merck Eprova AG v. Gnosis S.p.A.*,
901 F.Supp.2d 436 (S.D.N.Y. 2012) ..................................................................... 16, 26

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990) .......................................................................................................... 10

*Millennium Access Control Tech. v. On the Gate*,
2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017) ......................................................... 26

*Morales v. Kimberly-Clark Corp.*,
2020 WL 2766050 (S.D.N.Y. May 27, 2020) ........................................................... 27

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .................................................................................................. 18

*Nat'l Debt Relief v. Season 4*,
2024 WL 2941397 (S.D.N.Y. May 20, 2024) .......................................................... 24

*ONY v. Cornerstone Therapeutics*,
720 F.3d 490 (2d Cir. 2013) ..................................................................................... 20

*Paige v. DEA*,
665 F.3d 1355 (D.C. Cir. 2012) ............................................................................... 13

*Pellegrini v. Ne. Univ.*,
2013 WL 5607019 (D. Mass. Aug. 23, 2013) .......................................................... 17

*Phantom Touring v. Affiliated Publ'ns*,
953 F.2d 724 (1st Cir. 1992) .................................................................................... 22

*Port Dock & Stone Corp. v. Oldcastle Ne.*,
507 F.3d 117 (2d Cir. 2007) ....................................................................................... 9

*Pro. Sound Servs. v. Guzzi*,
2003 WL 22097500 (S.D.N.Y. Sep. 10, 2003) ....................................................... 22

*Protect the Pub.'s Tr. v. IRS*,
2024 WL 663427 (D.D.C. Feb. 16, 2024) ............................................................... 13

*Randa Corp. v. Mulberry Thai Silk*,
2000 WL 1741680 (S.D.N.Y. Nov. 27, 2000) ......................................................... 20

*Rapaport v. Barstool Sports*,
2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) .......................................... 20, 22, 23

*Rapoport v. Asia Elecs. Holding Co.*,
88 F.Supp.2d 179 (S.D.N.Y. 2000) ...................................................................... 9, 17

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) ..................................................................................... 11

*Romeo & Juliette Laser Hair Removal v. Assara I LLC*,
2016 WL 815205 (S.D.N.Y. Feb. 29, 2016) ........................................................... 25

v

*Rosenblatt v. Baer*,
 383 U.S. 75 (1966) ...................................................................................................... 18

*Simmons Ford v. Consumers Union of U.S.*,
 516 F.Supp. 742 (S.D.N.Y. 1981) ............................................................................. 18

*Sira v. Morton*,
 380 F.3d 57 (2d Cir. 2004) ........................................................................................... 3

*SlackPass v. Frosted*,
 2025 WL 1004854 (S.D.N.Y. Mar. 31, 2025) .......................................................... 25

*Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*,
 380 F.3d 126 (2d Cir. 2004) ....................................................................................... 18

*Souza v. Exotic Island Enters.*,
 68 F.4th 99 (2d Cir. 2023) .......................................................................................... 26

*United States v. Certain Prop. Owned by Salomon Bros.*,
 1992 WL 295221 (S.D.N.Y. Sep. 14, 1992) ............................................................. 24

*United States v. Mozer*,
 828 F.Supp.208 (S.D.N.Y. 1993) .............................................................................. 24

*Unlimited Cellular v. Red Points Sols. SL*,
 677 F.Supp.3d 186 (S.D.N.Y. 2023) ........................................................................... 9

*UPS Store v. Hagan*,
 2015 WL 9256973 (S.D.N.Y. Nov. 18, 2015) .......................................................... 16

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
 425 U.S. 748 (1976) .................................................................................................... 17

*Weight Watchers Int'l v. Noom*,
 403 F.Supp.3d 361 (S.D.N.Y. 2019) ......................................................................... 20

*White Plains Towing Corp. v. Patterson*,
 991 F.2d 1049 (2d Cir. 1993) ..................................................................................... 11

**Statute**

N.Y. Civ. Rights Law §70-a ................................................................................................ 28

**Other Authorities**

Bitcoin "Dusting" Attack You Didn't Know About W/ Galaxy Digital, CoinDesk
(Oct. 18, 2025), *available at* https://perma.cc/F4GB-9EE2 ...................................................... 6

Memorandum of Law in Support of Fee Award, *Bobulinski v. Tarlov*, No. 1:24-cv-
2349 (S.D.N.Y. Dec. 20, 2024) ............................................................................................ 28

**INTRODUCTION**

This case is a naked and improper effort by Plaintiff Salomon Brothers Group Inc. to use Lanham Act false-advertising liability to silence protected speech that is not remotely commercial or false, but which Plaintiff simply does not like.  The speech at issue in this lawsuit originates from an investigative report on a matter of interest to the cryptocurrency community.  The report was prepared by the research team at Defendant Galaxy Digital Inc., a global leader in digital asset products and services.  The report shed light on suspicious activity on the blockchain, describing how Plaintiff's client sent anonymous messages to holders of dormant Bitcoin wallets, claiming "constructive possession" of their wallets and warning that inaction would lead to relinquished property rights. The researchers also investigated Plaintiff, reporting that Plaintiff had recently purchased the trademark to the original Salomon Brothers investment bank.  Importantly, the Complaint affirms the accuracy of the report.  Remarkably, however, Plaintiff claims that a member of Galaxy's research team engaged in false advertising in a subsequent podcast interview *about* the report, when he discussed Salomon Brothers, as well as the report's findings and the implications for the cryptocurrency markets.

The mismatch between the speech at issue and Plaintiff's false advertising claim is apparent on its face.  This case does not involve any advertisement, commercial speech, or campaign targeted at consumers.  By going after Galaxy for the reporting and commentary of a member of its research arm on a podcast, Plaintiff has targeted speech that is at the heart of what the First Amendment protects, and which the Lanham Act does not reach.  But this is worse than a square peg being jammed into a round hole: Plaintiff misrepresents what was said and who said it.  Many of the supposedly actionable statements were not about Plaintiff at all or were made by the podcast hosts and not by Galaxy's employee, and all were non-actionable opinions on topics of public interest.  Plaintiff baldly claims it was wrongly injured by the podcast interview, while ignoring

the natural fallout from its association with suspicious behavior on the blockchain, exposed by a report whose accuracy is not in dispute. Plaintiff distorts the law and the facts at every turn.

This lawsuit is especially pernicious because it threatens to punish First Amendment-protected speech that is of interest and value to the public, and to chill such speech in the future with the threat of costly litigation. Because no pleading amendment can cure these fundamental defects, and because protracted litigation threatens to further harm the constitutional rights at stake, this case should be dismissed promptly and with prejudice. And because this is an exceptional case, where the Complaint lacks any basis in fact or law, Galaxy should be awarded attorney's fees upon dismissal.

## BACKGROUND

This case originates from a research report on a matter of public concern about a campaign on the blockchain by Plaintiff's client to target inactive bitcoin wallets. Plaintiff concedes that the report was accurate. The report was the subject of a subsequent podcast interview that included a discussion critical of the Plaintiff ("Salomon Encore") and the original Salomon Brothers ("Legacy Salomon"), whose trademark Plaintiff had purchased. Plaintiff now seeks to hold Galaxy liable for the discussion on that podcast, including for statements that were not about the Plaintiff, and which were not made by Galaxy.

### *The Anonymous Dusting Campaign*

In the summer of 2025, unease was mounting in the cryptocurrency market. An anonymous actor had "dusted" tens of thousands of bitcoin wallets—i.e., sent them tiny quantities of the digital currency Bitcoin—and included ominous warnings with the transfers. Compl.¶14; *see also* Zack

2

Pokorny & Will Owens, *The Great Bitcoin Dusting*, Galaxy Research ("Research Report"), Ex.A.[1] The notices claimed that the transferor had taken "constructive possession" of the wallets and challenged recipients to prove that their wallets had not been abandoned. Ex.A at 3. The transferor suggested that it was acting altruistically, to protect the Bitcoin network. *Id.* at 11. But the notices suggested that the transferor's real motive may have been to establish a predicate for claiming dormant Bitcoin wallets under state abandoned-property laws. *Id.* at 39, 49-50. The transferor revealed that it was represented by investment bank "Salomon Brothers." *Id.* at 3; Compl.¶10. The warning messages linked to Salomon Encore's website, which provided instructions to prove that dormant wallets were active. Ex.A at 11-12. Salomon Encore touted the dusting campaign on its website. *Id.* at 11.

The dusting campaign, with its warning that Plaintiff's unidentified client had taken "constructive possession" of tens of thousands of Bitcoin wallets, stoked alarm across the crypto-using public. Claiming "constructive possession" of the wallets would be of little use if the "duster" lacked possession of the wallets' private keys—unless, perhaps, "someone [had] discovered a quantum vulnerability in the Bitcoin protocol." *Id.* at 4. "Bitcoin's potential vulnerability to quantum computing" had "been a major topic of discussion and debate in the [crypto] community." *Id.* at 18. The dusting campaign fueled public concern that such a

---

[1] This Court may consider Galaxy's Research Report, a transcript of the podcast episode, and the cease-and-desist communications (included as Exhibits A, B, and C, respectively) on a motion to dismiss. The Complaint "explicitly refers to and relies upon," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) these materials. The podcast "contain[s] the allegedly defamatory statements." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 455 (S.D.N.Y. 2012). Plaintiff relies on the Research Report to claim that Galaxy knew its statements were false and to suggest that the statements were part of a broader defamatory campaign, Compl.¶¶3, 17, 22, making it "integral to the allegations in the complaint and necessary to place [the allegedly defamatory] comments in context," *Ganske v. Mensch*, 480 F.Supp.3d 542, 546 (S.D.N.Y. 2020). The Complaint relies upon the parties cease-and-desist communications to plead injury. Compl.¶28.

vulnerability had been discovered and eventually "became the subject of fevered speculation." *Id.* at 4, 22, 24.

### *The Research Report*

To "shed light on this murky affair" and address public fears of a quantum attack on Bitcoin, Galaxy's research division undertook a painstaking and thorough investigation. *Id.* at 4. Galaxy's research team traced tens of thousands of Bitcoin transactions and conferred with Salomon Encore in-person. *Id.* at 13-37; Compl.¶¶14-15. On October 8, 2025, Galaxy Research published its Research Report. Compl.¶16; *see also* Ex.A. The Research Report detailed the timeline of the dusting scare, analyzed the wallets targeted, and presented its findings. The researchers concluded that it was unlikely that the dusting affair portended a quantum vulnerability in the Bitcoin protocol but that the "situation warrants continued monitoring by the global Bitcoin and crypto communities given the novel legal theories that this enigmatic client may end up testing." Ex.A at 49.

The Research Report also shared information about Salomon Encore, the anonymous transferor's investment bank. While the Complaint insists that Plaintiff, which describes itself as "Salomon Encore," is "a real, ongoing company," Compl.¶20, it pleads next to nothing about what, exactly, that company does, the scale of its operations, or its profitability. The Complaint alleges only that Salomon Encore is a "New York corporation engaged in legitimate investment-banking operations," "maintains a physical office in Manhattan and conducts business both in New York and internationally," and is "authorized to conduct securities transactions through an affiliated broker-dealer." Compl.¶10. The Research Report—which Salomon Encore credited as "accurate," and to which Salomon Encore "did not object," Compl.¶16—provides more color on the hazy nature of the company's operations. It explained that Salomon Encore is not the storied

4

bond-trading firm best known for inventing mortgage-backed securities in the 1980s. *That* Salomon Brothers, following several acquisitions, is now called Citigroup Global Markets. Ex.A at 7. Citigroup officially retired the Salomon Brothers name in 2003, leaving the trademark up for grabs. *Id.* Plaintiff, whose leadership purportedly includes several "alumni" of the original Salomon Brothers firm, acquired that trademark. *Id.*; Compl.¶12.

The Complaint also alleges that Plaintiff and Galaxy "are competitors in the market for institutional digital-asset and blockchain-related financial services." Compl.¶1. While Salomon Encore's website represents that the company provides a wide range of services, like investment banking and M&A advice, it mostly highlights decades-old deals from long before Salomon Encore acquired the Salomon Brothers trademark. Ex.A at 8-9. Many links on the website take users to pages that are inoperative or expired. *Id.* The Research Report explained that aside from "helping" a related-party IPO on a small exchange owned by an affiliated company, there is no evidence of any work the firm has performed for anyone (aside from the "dusting" campaign). *Id.* at 8, 10. The Complaint provides no further detail about how Plaintiff, a fledgling company with limited track record and clientele, competes with Galaxy, a multibillion-dollar public company,[2] beyond asserting that Salomon Encore hoped to get business from an unnamed entity that, "[u]pon information and belief … had a business relationship with Galaxy." Compl.¶17.

### ***The Podcast***

One week after the Research Report was published, one of the Galaxy researchers—Zack Pokorny—appeared as a guest on the *Bitcoin Season 2* podcast to discuss the dusting incident and

---

[2] *See* Ex.A at 50-52 (referring to Galaxy's public filings).

Galaxy's findings.    Compl.¶18.[3]    The two podcast hosts and Pokorny discussed possible motivations for the campaign and the potential consequences.  Ex.B at 18-35.  The hosts asked Pokorny about Salomon Encore, which holds itself out as representing the anonymous "duster." *Id.* at 10:19-11:17.  One host asked Pokorny to "break down what's happening" with the firm, as "there are going to be some younger people listening to this who have no idea what Salomon Brothers was," while there would be "some boomers listening to this" that were "having flashbacks to the .com boom."  *Id.* at 10:12-16.  A host noted that he "believe[d] Salomon Brothers dissolved in 2003," and now there is "a pastiche of the old Salomon Brothers or alumni trying to start a new one."  *Id.* at 10:17-21.  The host asked Pokorny to "explain exactly what Salomon Brothers was, what the new Salomon Brothers is, and why they fit into" the dusting scheme.  *Id.* at 10:21-11:1.

Pokorny said he himself initially had "no idea what Salomon Brothers was."  *Id.* at 10:14-15.  He learned "they were a storied investment bank that goes back over a century," eventually being "absorbed by a number of companies."  *Id.* at 11:5-9.  Pokorny noted that "what ended up happening was a few years ago, a few alumni came together and they were like, let's get the band back together essentially.  Bought the trademark to the old Salomon Brothers and kind of spun up into this, what they call Salomon Encore."  *Id.* at 11:9-15.  "So," Pokorny continued, "the old Salomon Brothers is not what we're seeing here."  *Id.* at 11:15-16.  Instead, "[i]t's merely just like a phantom company with the name Salomon Brothers" with "no direct connection between the old one" and "what we have here today."  *Id.* at 11:16-21.  Pokorny reiterated that "[i]t's just a group of alumni who came together, bought the trademark and are essentially using the branding to carry on their business today."  *Id.* at 11:21-12:1.

---

[3] Bitcoin "Dusting" Attack You Didn't Know About W/ Galaxy Digital, CoinDesk (Oct. 18, 2025), *available at* https://perma.cc/F4GB-9EE2.

6

Pokorny and the podcast hosts continued to discuss Legacy Salomon. A host asked, "Salomon Brothers basically dissolved because of like … they were implicated in some sort of fraud. Right? Am I right about that?" *Id.* at 12:5-8. Pokorny replied, "Yeah, that is my understanding … they were like fined and penalized along some line …. [T]hey did get in some trouble or a few traders at the firm got in some trouble." *Id.* at 12:9-15. The podcast host remarked that the "trading scandal" "completely shattered their reputation," so it was odd that the dusting actor saw fit to invoke the Legacy Salomon name: "if you're going to try to have a, you know, veneer of legitimacy to this … dusting thing … I think the last thing you want to do is attach your name to Salomon Brothers." *Id.* at 12:17-13:3. The host observed that it was strange for an actor who "need[ed] to make [the dusting incident] look more legit" to "link to a since defunct now like, revived, although scrupulously revived [firm]," and also strange, given the content of the dusting notices, to communicate through Salomon Encore rather than a law firm. *Id.* at 13:13-15.

Pokorny noted that he "had similar questions," but "the way it looks at face value right now is just the person sending the messages wanted … an area that appeared to be reputable to sort of host the notice." *Id.* at 14:2-7. So the actor hired Salomon Encore, thinking "we have at least the … veil of Salomon Brothers branding and like, their whole website and whatever else may … come with that." *Id.* at 14:10-13. The podcast participants further discussed who could be behind the dusting event and what they hoped to gain. *Id.* at 17-30. As the episode ended, one host said he would "make sure … the full report is linked in the show notes" and "recommend[ed]" that listeners "make sure to follow … the Galaxy Research team," because "[t]hey put out some of the best reports." *Id.* at 34:15-19.

Notwithstanding its gratitude for the "accurate" Research Report, Compl.¶16, Plaintiff took issue with the podcast discussing it. Salomon Encore insisted that Pokorny's statements "clearly

qualif[ied]" as defamation under New York law and "demanded that Galaxy retract and correct its false and misleading statements." Compl.¶28; Ex.C at 4-5. In response, among other things, Galaxy explained that the dusting incident was a clear matter of public concern, that Salomon Encore would be unable to meet the "actual malice" requirement under defamation law, and that Salomon Encore had failed to identify any falsehoods in the podcast, much less falsehoods uttered by Pokorny about Salomon Encore. Ex.C at 7-8. Galaxy also reminded Plaintiff of New York's robust anti-SLAPP protections for commentary about matters of public concern. *Id.* at 9.

Abandoning its defamation claim, Plaintiff filed this Lanham Act suit on January 15, 2026, alleging that Pokorny's comments constituted false advertising for Galaxy's services. Galaxy now moves to dismiss.

## LEGAL STANDARD

### I.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). Instead, "[a] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle*

---

[4] It is "unsettled" in this Circuit whether Rule 9(b) applies to Lanham Act false-advertising claims. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F.Supp.3d 629, 637 (S.D.N.Y. 2018). Rule 9(b) does apply because a claim of *false* advertising sounds in fraud. The Complaint, however, fails to state a claim under any standard.

*Ne.*, 507 F.3d 117, 121 (2d Cir. 2007). While "the well-pleaded material allegations of the complaint are taken as admitted," any "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

Courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," which includes "documents 'integral to the complaint,' as well as of certain matters of public record." *Dfinity Found. v. N.Y. Times Co.*, 702 F.Supp.3d 167, 173 (S.D.N.Y. 2023). If such documents "contradict the allegations of the … complaint, the documents control." *Rapoport v. Asia Elecs. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000).

## II.    The Lanham Act

To state a claim under the Lanham Act, Plaintiff must plausibly allege: "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *Unlimited Cellular v. Red Points Sols. SL*, 677 F.Supp.3d 186, 200 (S.D.N.Y. 2023); *see* 15 U.S.C. §1125(a)(1)(B).

Whether a statement was made in commercial advertising or promotion is properly decided on a motion to dismiss. *See Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (per curiam). The same goes for whether a statement is a non-actionable opinion. *See Davis v. Avvo*, 345 F.Supp.3d 534, 542 (S.D.N.Y. 2018); *Int'l Code Council v. UpCodes Inc.*, 43 F.4th 46, 59 (2d Cir. 2022).

"There is particular value in resolving" such claims "at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Dfinity*, 702 F.Supp.3d at 173.

9

**ARGUMENT**

The Complaint wrongly alleges that Galaxy engaged in false advertising during the podcast interview about the Research Report and caused commercial damage to Plaintiff.  At least three independent grounds require dismissal of this baseless suit under well-established law.

*First*, the notion that Galaxy's speech was part of an advertising campaign is not only implausible but patently absurd.  The undisputed facts establish that Pokorny's remarks were constitutionally protected speech about a matter of public concern, in a journalistic forum, and were not aimed at taking customers from Plaintiff—a negligible newcomer noteworthy only for its association with a dusting campaign that had alarmed the public.

*Second*, Plaintiff's Complaint contorts the facts—from the identity of the speaker to the content of various statements—claiming harm from statements not made by Galaxy, that were not about Salomon Encore, and that were non-actionable opinions in any event.  The purportedly objectionable statements relate principally to Salomon Brothers's origins, and the checkered history of Legacy Salomon, a distinct entity that is not a party here.  Observations about Legacy Salomon's reputation and the lack of meaningful connection between Legacy Salomon and Salomon Encore are quintessential opinions that courts are quick to protect.

*Third*, Plaintiff has failed to credibly allege that Salomon Brothers suffered any commercial injury from the supposedly false statements, rather than from its own questionable conduct related to the suspicious dusting campaign.

In short, this lawsuit aims to punish Galaxy's core protected speech on a matter of public interest.  This case should therefore be dismissed before it further chokes "the breathing space which [f]reedoms of expression require in order to survive."  *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990).  And because of the exceptional nature of the Complaint, which is completely

divorced from the facts and the law, this Court should award Galaxy attorney's fees under the Lanham Act and New York's Anti-SLAPP law.

## I.      The Complaint Fails To Adequately Allege That The Podcast Statements Were Made In Commercial Advertising Or Promotion.

The Complaint must be dismissed for the simple reason that the podcast episode did not involve commercial advertising or promotion. That is both common sense and apparent under the law. The Lanham Act was "narrowly drafted to encompass only clearly false and misleading commercial speech," *Groden v. Random House*, 61 F.3d 1045, 1052 (2d Cir. 1995), and "is limited to false advertising as that term is generally understood." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974). And for good reason. While "commercial speech … may have little or no relevance to matters of public concern," *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir. 1993), non-commercial speech enjoys full First Amendment protection. It is therefore well established that courts "must construe the [Lanham] Act narrowly" to avoid "intrud[ing] on First Amendment values." *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).

The Second Circuit has made clear that the Lanham Act "cannot be stretched so broadly as to encompass *all* commercial speech." *Fashion Boutique of Short Hills v. Fendi USA*, 314 F.3d 48, 57 (2d Cir. 2002) (emphasis added). Instead, to constitute "commercial advertising or promotion," a plaintiff must establish: (1) "commercial speech," (2) "made for the purpose of influencing consumers to buy defendant's goods or services," (3) that was "disseminated sufficiently to the relevant purchasing public." *Gmurzynska*, 355 F.3d at 210; *see also Fashion Boutique*, 314 F.3d at 57 (plaintiff must demonstrate "that the contested representations are part of an organized campaign to penetrate the relevant market"). The Complaint fails to adequately

11

allege any of the three prongs for commercial advertising or promotion under settled Second Circuit law.

**A.     The Complaint Fails To Adequately Allege That Pokorny's Speech Was Commercial or Made To Influence Consumers.**

At the outset, Pokorny's commentary plainly does not qualify as commercial speech, and the Complaint likewise fails to properly allege that his comments were made to influence consumers to buy Galaxy's goods and services.  Commercial speech is "speech which does no more than propose a commercial transaction." *Gmurzynska*, 355 F.3d at 210 (quoting *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 422 (1993)).  It has a market-oriented thrust, "consist[ing] primarily of price and quantity information." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 & n.12 (1983).  The typical Lanham Act case therefore involves "paid advertisements by a commercial defendant on television or radio, or in newspapers or magazines." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1532 (S.D.N.Y. 1994).

This case is anything but typical.  It does not involve an ad.  There is no allegation that Galaxy paid for Pokorny to appear on the podcast, and his statements lacked any "core commercial information, including price and product information." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 2019 WL 1768965, at *10, *11 n.8 (S.D.N.Y. Apr. 4, 2019).  Similarly, Galaxy did not "promote [its] products as superior" to those of Plaintiff or "recommend[]" that customers cease purchasing Plaintiff's services and "replace" Plaintiff with Galaxy. *Enigma Software Grp. USA v. Bleeping Comput. LLC*, 194 F.Supp.3d 263, 294 (S.D.N.Y. 2016) (collecting cases).  Pokorny never even mentioned services that Galaxy offers, let alone that Galaxy's services were superior to those of Salomon Encore, belying any claim that the statements were intended to influence consumers.  Vague suggestions that Galaxy "used the Episode to promote itself as a 'reputable public

12

company,'" Compl.¶23, or "sought to signal to institutional investors that it possesses superior capabilities," Compl.¶24, fall short; "only commercial speech that a competitor employs for the *express* purpose of influencing consumers to buy the competitor's goods or services is actionable under section 43(a)." *EventMedia Int'l v. Time, Inc. Mag. Co.*, 1992 WL 321629, at *3 (S.D.N.Y. Oct. 26, 1992) (emphasis added).

Far from constituting commercial speech, Pokorny's remarks were dialogue on "a subject of … manifest public interest," *Groden*, 61 F.3d at 1052, namely potential systemic vulnerabilities in the Bitcoin protocol and attempts to seize "dormant" wallets. The dusting incident discussed on the podcast "sent shockwaves through the cryptocurrency industry," as market participants worried that the Bitcoin protocol was no longer secure. *Protect the Pub.'s Tr. v. IRS*, 2024 WL 663427, at *11 (D.D.C. Feb. 16, 2024) (collapse of FTX exchange was a "matter of great public concern"). The stakes for the public were high. Very high. The existence of actual systemic vulnerability carried with it the potential to shatter the cryptocurrency community's trust in Bitcoin and put hundreds of billions of dollars in private capital at risk. The possibility that the anonymous duster was aiming to seize unwilling holders' wallets was another matter of obvious public concern. *See Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (article concerning "fraud in the art market" was "certainly protected"); *De Ford v. Koutoulas*, 2025 WL 2494224, at *3 (M.D. Fla. Aug. 29, 2025) ("[A] federal class action concerning allegations of fraudulent cryptocurrency dealings is a matter of public concern."). Equally relevant to the public were the identity and pedigree of Salomon Encore—the company affiliated with this alarming dusting campaign. *See, e.g.*, *Paige v. DEA*, 665 F.3d 1355, 1363 n.14 (D.C. Cir. 2012) ("The identity of an individual involved in a matter of public concern is also a matter of public concern[.]").

The non-commercial nature of the speech is apparent not only from the content, but also from the medium: a podcast, which is a forum known for free-wheeling, opinionated expression on matters of public concern.  Podcasts are like a news or radio interview, forums which have "traditionally been granted full protection under the First Amendment." *Boule*, 328 F.3d at 91. *See Gallagher v. Philipps*, 563 F.Supp.3d 1048, 1078 (S.D. Cal. 2021) ("Statements made in a podcast are sufficiently similar that the Court finds them to satisfy the public forum requirement as well.").  This case resembles *Boule*, where the plaintiff art collectors alleged that disparaging remarks by defendant art dealers in a leading art publication "damaged [their] commercial interests." *Boule*, 328 F.3d at 91.  The Circuit had "little hesitation in deciding that as a matter of law" the art dealers' statements were "not commercial speech." *Id.*  The relevant statements "contribute[d] to reporters' discussion of an issue of public importance," and were "inextricably intertwined with the reporters' coverage of their topic." *Id.*  So too here.  *See also Gmurzynska*, 355 F.3d at 210 (journalist's article "is not commercial advertising, commercial promotion, or commercial speech"); *Gordon & Breach*, 859 F.Supp. at 1544 & n.12 (a "letter to the editor," "press releases" and  "comments" in a newsletter fell "too close to core First Amendment values to be considered 'commercial advertising or promotion'").

Plaintiff suggests that the speech was nonetheless an advertisement because Galaxy intended to "influence th[e] audience's perceptions of Salomon in a negative way." Compl.¶¶23-25.  But even if true, "[t]he non-commercial nature" of the podcast "cannot be overcome by plaintiff claiming an improper purpose motivated the publisher to run" it. *Croton Watch Co. v. Nat'l Jeweler Mag.*, 2006 WL 2254818, at *10 (S.D.N.Y. Aug. 7, 2006).  "No matter how critical of plaintiff, and no matter how true or false," this commentary was simply not commercial speech. *Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*, 2004 WL 1574645, at *7 (S.D.N.Y. July 13, 2004)

14

(allegation that trade magazine's owners caused it to publish an article critical of their competitors was insufficient to plead commercial speech).

**B.    The Complaint Fails To Adequately Allege Dissemination to the Relevant Purchasing Public.**

The Complaint similarly fails to allege that the speech was part of an "organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 57.

*First*, the Complaint is devoid of allegations of an "organized campaign." Plaintiff does not allege that Galaxy sought publicity for the report after it was published, that it had a role in the podcast's production, or that it scripted Pokorny's remarks. Pokorny's commentary was "[nothing] more than [an] individual reaction" to the hosts' questions about the dusting affair. *Fashion Boutique*, 314 F.3d at 58. And "businesses harmed by *isolated disparaging statements*" "do not have redress under the Lanham Act." *Id.* at 57 (emphasis added). Plaintiff also alleges "upon information and belief" that Galaxy "provided false and misleading statements" about Salomon Encore "in private discussions with Galaxy's clients." Compl.¶17. These allegations about private conversations, apart from being conclusory and unsubstantiated, are precisely what courts have deemed inadequate to establish dissemination. *See, e.g.*, *Fashion Boutique*, 314 F.3d at 57 (evidence that defendant made 27 oral statements in marketplace of thousands of customers was insufficient to constitute dissemination).

At best, the Complaint notes that the podcast "was distributed on major podcast platforms," but Plaintiff's use of the passive voice studiously avoids falsely attributing the podcast platform's distribution to Galaxy. Comp.¶23. The Complaint alleges that "Galaxy heavily promoted" the podcast but refers only to Galaxy posting a hyperlink on its social media and website after the fact. Compl.¶23. That is different in kind from the type of systematic and targeted distribution that courts have deemed part of an organized advertising campaign. *See, e.g.*, *Gordon & Breach*, 859

15

F.Supp. at 1544-45 ("survey results favoring defendants' products" distributed to "core consumers of those products"); *Merck Eprova AG v. Gnosis S.p.A.*, 901 F.Supp.2d 436, 450 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014) (distribution of product specification sheets to potential customers at trade show); *UPS Store v. Hagan*, 2015 WL 9256973, at *6 (S.D.N.Y. Nov. 18, 2015) (statements systematically made at nearly every franchise location in Manhattan).

*Second*, the Complaint fails to plead a "relevant market" targeted by the supposed advertising campaign. *See Enigma*, 194 F.Supp.3d at 295 (internet posts were "aimed at" "potential consumers of anti-malware software"). Plaintiff's references to a market for "institutional digital-asset and blockchain-related financial services," Compl.¶1, and "outreach to market participants in the same commercial ecosystem," Compl.¶3, obscure more than clarify. The Complaint is devoid of any credible allegations that Salomon Encore's fly-by-night operation and Galaxy's multi-billion-dollar public company cater to the same customer base within the broad "commercial ecosystem" of digital-asset financial services, let alone that Galaxy targeted those customers during the podcast for a precise service at Salomon Encore's expense.

The Complaint lacks specificity about the relevant market shared by the parties for a straightforward reason: there isn't one. Salomon Encore, with its sketchy website and flimsy track record, is not in Galaxy's arena. Ex.A at 8-9. Asserting that the parties both operate in cryptocurrency financial services is like saying that FedEx and the local bike courier are both in the delivery business. Plaintiff cannot elide the relevant market by side-stepping the pleading requirements, especially where the Research Report—incorporated into the Complaint—lays bare Salomon Encore's insubstantial business operations.[5] Plaintiff's conclusory allegation that Galaxy

---

[5] The Second Circuit has declined to resolve whether the Lanham Act independently requires that the defendant and plaintiff be competitors. *See, e.g.*, *Fashion Boutique*, 314 F.3d at

sought to "tarnish Salomon and to position itself as the superior provider of institutional digital-asset services," Compl.¶3, is a farfetched and "unwarranted deduction," *First Nationwide Bank*, 27 F.3d at 771, from these facts. *See Rapoport*, 88 F.Supp.2d at 184 (where documents incorporated by reference into the complaint "contradict the allegations of the … complaint, the documents control").

Moreover, even if Plaintiff adequately alleged a dissemination campaign—which it has not—that would still not render Pokorny's speech commercial. Commercial speech "must be distinguished by its *content*," not by its use. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 761 (1976). Where the underlying speech is non-commercial, dissemination will not render it so. *See Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F.Supp. 169, 178 n.6 (S.D.N.Y. 1995). Here, the podcast was editorial. Galaxy's "verbatim" "reproduc[tion]" of the podcast on "publicly accessible website[s]," unadorned by any "express appeal[s] to buy [Galaxy's] product" and divorced from any "concerted campaign" to target a "class or category of purchasers," does not strip the podcast of its First Amendment protections. *Pellegrini v. Ne. Univ.*, 2013 WL 5607019, at *7-9 (D. Mass. Aug. 23, 2013), *report and recommendation adopted*, 2013 WL 5755327 (D. Mass. Sep. 25, 2013).

In short, Pokorny's statements were not commercial advertising or promotion, "necessitating the dismissal of the claim for false advertising." *Croton Watch Co.*, 2006 WL 2254818, at *10.

---

58 (expressing "no view" on the "soundness" of this requirement). The notion that Plaintiff, with little more than a business registration and "helping" a related-party IPO to its name, competes in any market with Galaxy is implausible on its face. Whether or not competition is a standalone element, the absence of concrete allegations of genuine competition further highlights the implausibility of Plaintiff's claim that the podcast was commercial speech intended to influence prospective customers of Salomon Encore.

17

II.     **The Statements Cited In The Complaint Are Either Irrelevant To Lanham Act Liability Or Protected Opinion.**

Even if Pokorny's commentary were commercial speech, the statements cited by the Complaint (at ¶19) are non-actionable for other reasons.

A.      **Many of the Statements Cited in the Complaint Either Are Not About Plaintiff or Were Not Made by Galaxy.**

The flimsiness of the Complaint is compounded by the fact that many of the supposedly actionable statements were not about Salomon Encore at all or are not attributable to Galaxy.

1. The Complaint rests on many supposedly false and disparaging statements that were not about Salomon Encore. But "[i]n order to state a claim, Plaintiff must allege that Defendants have misrepresented *their*, or *Plaintiff's*, products or commercial activities, or the association between their products or activities and those of Plaintiff." *G & F Licensing Corp. v. Field & Stream Licenses Co.*, 2010 WL 2900203, at *5 (S.D.N.Y. July 16, 2010) (emphasis added) (citing *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004)). That requirement is consistent with the "long line of cases hold[ing] that First Amendment considerations preclude a plaintiff from recovering based on losses sustained by virtue of the defamation of another." *Simmons Ford v. Consumers Union of U.S.*, 516 F.Supp. 742, 751 (S.D.N.Y. 1981). *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 292 (1964); *Rosenblatt v. Baer*, 383 U.S. 75, 81-83 (1966).

The Complaint mischaracterizes the recorded podcast, during which many of the allegedly false commercial statements were made about Legacy Salomon, a distinct entity whose trademark Plaintiff purchased. Among other things, Pokorny and the podcast hosts discussed that Legacy Salomon:

- "basically dissolved because … they were implicated in some sort of fraud";
- "w[as] like, fined and penalized along some line";
- "did get in some trouble or a few traders at the firm got in some trouble";

18

- "ended up getting fined";
- had a reputation that was "completely shattered"; and
- is "defunct."

Ex.B at 12:6-13:14. These statements were unambiguously about Legacy Salomon. It is therefore irrelevant that Salomon Encore "has never been implicated in any fraud," "has not been fined or penalized by any financial regulator," does not have a "'shattered' reputation," and is not "defunct." Compl.¶¶11-13,15,20. As Plaintiff well knows, such things were never said about Salomon Encore, and it cannot assert a claim of injury based on statements made about another entity.

2. The Complaint likewise obfuscates that many of the supposedly objectionable statements are not attributable to Galaxy, but to the journalists hosting the podcast. Where, as here, the alleged "statements originate[]" with a person who "is not a party" to the case, the statements are "irrelevant" to the lawsuit. *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). Here, Salomon Encore tries to hold Galaxy accountable for statements made by the podcast hosts that:

- Legacy Salomon "basically dissolved because … they were implicated in some sort of fraud";
- Legacy Salomon's reputation is "completely shattered";
- Legacy Salomon is "defunct"; and
- Something might lack a "veneer of legitimacy."

*Compare* Compl.¶19 *with* Ex.B at 12:6-13:14. Under the Lanham Act, Galaxy cannot be made to answer for opinions offered by an uninvolved third party on his own podcast. *See Gmurzynska*, 355 F.3d at 210 (affirming dismissal of Lanham Act claim where the speech was not commercial, and the defendant "did not make any of the alleged misrepresentations").

Plaintiff's emphasis on statements that were not about Salomon Encore, or were not made by Pokorny, further underscores that Pokorny's participation in the podcast—which principally focused on analysis of the dusting campaign—was not commercial speech intended to poach customers from Salomon Encore. Instead, through misattribution and mischaracterization,

19

Plaintiff seeks retribution for a back-and-forth between journalists and a researcher about Plaintiff's own questionable conduct in an area of public concern.

**B.      The Statements Cited in the Complaint Are Non-Actionable Opinions.**

Once the Complaint is reduced to Pokorny's own statements about Salomon Encore, very little remains.  All that is left are Pokorny's alleged statements that Salomon Encore is a "phantom company" with "no connection" to Legacy Salomon, Compl.¶19—statements that are textbook non-actionable opinions.  The same is true for the other statements (not by Pokorny, or not about Salomon Encore) that form the basis for the Complaint.

"[S]tatements of opinion are generally not the basis for Lanham Act liability."  *Groden*, 61 F.3d at 1051.  Rightly so: "statements of pure opinion—that is, statements incapable of being proven false—are protected under the First Amendment."  *ONY v. Cornerstone Therapeutics*, 720 F.3d 490, 496 (2d Cir. 2013).  So, "[a]s always with the public expression of opinion," the Second Circuit has "been careful not to permit overextension of the Lanham Act to intrude on First Amendment values."  *Boule*, 328 F.3d at 91-92 (quoting *Groden*, 61 F.3d at 1052).

The ultimate question is whether, viewed in context, "a statement 'could [] reasonably be seen as stating or implying provable facts.'"  *Weight Watchers Int'l v. Noom*, 403 F.Supp.3d 361, 370 (S.D.N.Y. 2019) (quoting *Groden*, 61 F.3d at 1051); *see Randa Corp. v. Mulberry Thai Silk*, 2000 WL 1741680, at *2 (S.D.N.Y. Nov. 27, 2000).  Where, as here, the statements were made in a "free-wheeling" forum known for the open exchange of opinion, that is a "persuasive factor" weighing for a finding that the statements are non-actionable opinion.  *Rapaport v. Barstool Sports*, 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021), *aff'd*, 2024 WL 88636 (2d Cir. Jan. 9, 2024); *see Boule*, 328 F.3d at 91.

20

## 1. Pokorny's statements about Salomon Encore are non-actionable opinions.

The allegedly false statements about Salomon Encore attributable to Pokorny—that Salomon Encore is a "phantom company" with "no connection" to Legacy Salomon—are protected opinions that are not actionable under the Lanham Act.

As an initial matter, Plaintiff misrepresents these statements and rips them out of context to alter their meaning. Pokorny's actual observation was that Salomon Encore is "merely just like a phantom company with the name Salomon Brothers" and has "no *direct* connection" with Legacy Salomon. Ex.B at 11:16-18 (emphasis added). Plaintiff claims falsity because Legacy Salomon alumni founded Salomon Encore. Compl.¶20. But that fact was mentioned no less than *three* times:

> [Podcast Host]: And now we have this kind of, I don't know, *a pastiche of the old Salomon brothers or alumni* trying to start a new one.
>
> …
>
> Zack Pokorny: … [W]hat ended up happening was *a few years ago, a few alumni came together* …. Bought the trademark to the old Salomon Brothers and kind of spun up into this, what they call Salomon Encore. So like, the old Salomon Brothers is not what we're seeing here. It's merely just like a phantom company with the name Salomon Brothers. So there's really no direct connection between the old one … versus what we have here today. *It's just a group of alumni who came together*, bought the trademark and are essentially using the branding to carry on their business today.

*See* Ex.B at 10:19-12:1 (emphases added).[6]

Pokorny disclosed that Legacy Salomon alumni bought the Salomon Brothers trademark. He then offered his take that this did not amount to much of a relationship between the two firms.

---

[6] The Complaint's omission of this critical context is no mere oversight. As Galaxy already pointed out to Plaintiff, the allegation of falsity "conveniently ignores [Pokorny's] lengthy explanation … of Salomon Brothers's origins" on the podcast, which "belies any claim that the remarks falsely represented your client's corporate status or misled listeners about the connection between the two entities." Ex.C at 8-9.

*Id.* The "average person" "assessing those statements in their context as a whole, would understand them to reflect [Pokorny's] opinions" about "disclosed facts." *Dfinity*, 702 F.Supp.3d at 176; *see also Rapaport*, 2021 WL 1178240, at *12 ("when a statement of opinion is either 'accompanied by a recitation of the facts on which it is based or … does not imply the existence of undisclosed underlying facts,' it is not actionable"). The statements therefore "[cannot] reasonably be interpreted as stating anything other than a subjective belief." *Groden v. Random House*, 1994 WL 455555, at *6 (S.D.N.Y. Aug. 23, 1994); *see also UpCodes*, 43 F.4th at 60 n.7 ("subjective claims" about products properly found non-actionable on a motion to dismiss).

Moreover, describing Salomon Encore as "merely just like a phantom company with the name Salomon Brothers," is obviously not a literal statement of fact; no one suggested that Salomon Encore is a supernatural entity that might haunt the blockchain. To the extent the "phantom" description is even pejorative, it is too "vague and imprecise," *Pro. Sound Servs. v. Guzzi*, 2003 WL 22097500, at *2 (S.D.N.Y. Sep. 10, 2003), *aff'd*, 159 F. App'x 270 (2d Cir. 2005), to be amenable to "scientific, accounting or other specific verification," *Licata & Co. Inc. v. Goldberg*, 812 F.Supp.403, 408 (S.D.N.Y. 1993). Courts routinely find more express insults non-actionable. *See Rapaport*, 2021 WL 1178240, at *14 (calling plaintiff a "fraud," "hack," and "wannabe"); *Levinsky's v. Wal-Mart Stores*, 127 F.3d 122, 129 (1st Cir. 1997) (saying plaintiff's business was "trashy"); *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987) (describing business as a "scam"); *Phantom Touring v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) (insulting plaintiff's show as "a rip-off, a fraud, a scandal, a snake-oil job").

This case resembles *Dfinity*, which dismissed a defamation suit by an alleged crypto scammer against a cryptocurrency research firm that, in a publicly disseminated report and related video, had "described various findings based on publicly available information." *Dfinity*, 702

22

F.Supp.3d at 172.  As in *Dfinity*, Plaintiff does not contest the facts disclosed in the Research Report and discussed on the podcast but takes issue with "the inferences drawn from the facts cited." *Id.* at 176.  Plaintiff's displeasure with these inferences is not actionable under the Lanham Act.

### 2.  The remaining statements are protected opinions.

In addition to being irrelevant, the remainder of the allegedly false statements about Legacy Salomon, or by the podcast hosts, are likewise non-actionable opinions.

1. The statements that Legacy Salomon: (1) "basically dissolved because they were implicated in some sort of fraud"; (2) "were like fined and penalized along some line;" (3) "got into some trouble"; and (4) is "defunct," are all vague, subjective opinions.

For starters, the host did not assert that Legacy Salomon committed fraud.  He asked a question: "Salomon Brothers basically dissolved because of like … they were implicated in some sort of fraud.  Right?"  Ex.B at 12:5-7.  "[A] question, however embarrassing or unpleasant to its subject, is not accusation" that is capable of being false.  *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015).  Pokorny's response was likewise hedged and laden with caveats, "*Or* they … were *like* fined and penalized *along some line*," and "a few traders at the firm got in some trouble."  Ex.B at 12:11-15 (emphases added).  These off-the-cuff observations were not presented as a precise historical recitation of Legacy Salomon's legal woes, but as subjective remarks.  The context—the give-and-take of a podcast interview where the participants traded views on a matter of public concern—makes this clear.  *See Rapaport*, 2021 WL 1178240, at \*12 (comments on "free-wheeling internet fora" more likely to "be understood … as reflecting the author's opinion").

23

Regardless, broad statements about a party's legal culpability are mere opinions. For example, "assertions that [plaintiff] 'may have violated both federal and state consumer protection laws'" or charged "excessive—and illegal—fees for their services" were non-actionable because they were "more general than precise." *Nat'l Debt Relief v. Season 4*, 2024 WL 2941397, at *5 (S.D.N.Y. May 20, 2024). *See also Conte v. Newsday*, 2013 WL 978711, at *16 (E.D.N.Y. Mar. 13, 2013) (accusing plaintiff of operating a "Ponzi scheme" non-actionable opinion); *Anthem Sports v. Under the Weather*, 320 F.Supp.3d 399, 414 (D. Conn. 2018) (accusation that competitor's products were "illegal knockoffs" non-actionable opinion).

Here, it is not clear what fraud, penalty, or "trouble" the interlocutors had in mind, and Plaintiff can hardly deny that Legacy Salomon was implicated in serious wrongdoing before its first acquisition. *See United States v. Certain Prop. Owned by Salomon Bros.*, 1992 WL 295221 (S.D.N.Y. Sep. 14, 1992); *United States v. Mozer*, 828 F.Supp.208, 209 (S.D.N.Y. 1993). Any attempt to determine whether Legacy Salomon's decline, acquisitions, and rebranding qualifies as being "basically dissolved" or "defunct" just shows why imprecise, live-air statements cannot support a Lanham Act violation. *See, e.g.*, *Anthem Sports*, 320 F.Supp.3d at 415 (term that is "itself suggestive of a legal opinion" is not actionable).

2. Finally, the Complaint incorrectly alleges that Pokorny falsely conveyed that Salomon Encore's reputation was "completely shattered" and lacks "a veneer of legitimacy." Compl.¶19. Once again, Plaintiff distorts the remarks. A podcast host (not Pokorny) described Legacy Salomon's (not Salomon Encore's) reputation as "completely shattered." Ex.B at 12:20. And he then opined that if one wanted to lend legitimacy to a sketchy dusting initiative, hiring Salomon Brothers was an odd choice. Regardless, general statements about reputation are too imprecise to be deemed true or false. In *Licata*, for example, the court held that a statement that plaintiff "was

not qualified to handle their business" was a "personal opinion on a nonverifiable matter," even when made to plaintiff's customers. *Licata*, 812 F.Supp. at 408. *See also, e.g., SlackPass v. Frosted*, 2025 WL 1004854, at \*16 (S.D.N.Y. Mar. 31, 2025) (plaintiff had a "reputation" for failing to meet expectations); *Romeo & Juliette Laser Hair Removal v. Assara I LLC*, 2016 WL 815205, at \*8 (S.D.N.Y. Feb. 29, 2016) (plaintiff's services were slow and employees rude); *Anthem Sports*, 320 F.Supp.3d at 414 (plaintiff's product was "of poor quality").

## III.    Salomon Has Not Plausibly Alleged Injury Caused By Galaxy.

Plaintiff's conclusory allegations also fail to establish injury. A Lanham Act plaintiff must allege that its asserted injury falls within the "zone of interests" protected by the statute and that its injury was "proximately caused by violations of the statute." *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 129-34 (2014). A plaintiff must actually "plead *facts* demonstrating that there are consumers who would have purchased its [products or services] but did not because [of] [defendant's conduct]." *Casper Sleep v. Nectar Brand*, 2020 WL 5659581, at \*7 (S.D.N.Y. Sep. 23, 2020) (emphasis added).

1. Plaintiff's threadbare allegations of harm and causation "provide no reasonable basis for concluding that such consumers exist." *Id.* Plaintiff alleges that, "[i]n the wake of the Episode's publication, Salomon has suffered actual damage, including harm to its goodwill and loss of business opportunities." Compl.¶26; *see also id.* ¶35. But a plaintiff's "mere subjective belief" that it is "injured or likely to be damaged" by defendant's conduct is insufficient. *Davis*, 345 F.Supp.3d at 543. And while Plaintiff pleads (on information and belief) that it lost a "prospective business opportunity in temporal proximity to Galaxy's October 8 research report and in circumstances suggesting Galaxy's competitive influence in that same marketplace," Compl.¶26, that vague, conclusory allegation is not linked to the podcast, but to the Research Report that Salomon Encore *thanked* Galaxy for publishing. Plaintiff "has asserted no facts to support a

25

conclusion that any potential clients [were] dissuaded from hiring [it] because of anything that …

appeared on the [podcast]" beyond its conclusory say-so. *Davis*, 345 F.Supp.3d at 544; *see also*

*Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *5 (S.D.N.Y. Oct. 30, 2014) (dismissing

Lanham Act false advertising claim where complaint "provide[d] no factual support for [its]

conclusory allegations of harm").[7]

2. Plaintiff does not plausibly allege proximate cause either. Plaintiff baldly alleges that,

as a result of Galaxy's false advertising, "Salomon Brothers has suffered … injury to its business,

reputation, and goodwill." Compl.¶35. But "[a] complaint that offers only 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do.'" *Avalos*, 2014 WL

5493242, at *3 (citation omitted). As in *Millennium Access Control Tech. v. On the Gate*, which

had nearly identical proximate cause allegations, "Plaintiff's conclusory allegation[s] … lack[]

specificity and [are] insufficient to state a plausible claim for relief." 2017 WL 10445800, at *11

(E.D.N.Y. Feb. 14, 2017); *see also Gifford v. U.S. Green Bldg. Council*, 2011 WL 4343815, at *3

(S.D.N.Y. Aug. 16, 2011) (dismissing false-advertising claim where causation allegations were

"entirely speculative"). Here, any claim of proximate cause is also undermined by the reliance on

comments *not* made by Pokorny and *not* about Salomon Encore.

The allegations of proximate cause fail for another reason. It is altogether more plausible

that if Plaintiff did lose customers in the wake of the dusting incident, it was by virtue of its

association with a surreptitious campaign to lay claim to "dormant" Bitcoin wallets. Indeed, the

---

[7] While the Second Circuit grants a "presumption of injury" to plaintiffs that are "in direct competition with" defendants, *Souza v. Exotic Island Enters.*, 68 F.4th 99, 119 (2d Cir. 2023), that presumption is disfavored when the parties "*are not obviously in competition*," *Merck*, 760 F.3d at 260. The Complaint does not adequately allege that Salomon Encore competes with Galaxy in a relevant market, let alone that it "obviously" competes. *See supra* pp.5,16-17. *See also McKenzie v. Artists Rts. Soc'y*, 757 F.Supp.3d 427, 437 n.6 (S.D.N.Y. 2024).

Complaint itself suggests that customers began to flee in the immediate aftermath of the dusting incident, undermining the assertion that Salomon's injuries were proximately caused by one-off comments on the podcast.  *See* Compl.¶17; Compl.¶26 ("Salomon lost at least one prospective business opportunity in temporal proximity to Galaxy's October 8 research report.").

So "[w]hile [Plaintiff] contends that its injuries resulted from the [podcast] by itself," the dusting incident, with which Plaintiff publicly associated itself, was more plausibly "the actual cause" of any alleged injuries.  *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 484 (6th Cir. 2023).  Thus "[Plaintiff's] complaint fails to state a claim under the Lanham Act."  *Id.*; *see also Gray v. Amazon.com*, 2021 WL 1909737, at *4 (N.D.N.Y. May 12, 2021) (proximate-cause allegations insufficient where complaint "d[id] not exclude other possible explanations for Plaintiff's injury"); *Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, at *7 (S.D.N.Y. May 27, 2020) (similar).

## IV.    The Court Should Dismiss With Prejudice And Award Fees And Damages Under The Lanham Act And New York's Anti-SLAPP Law.

After painstaking research, Galaxy educated the public about a dusting campaign that had been the source of widespread concern and speculation.  Rather than defend its suspicious conduct on the merits, Plaintiff asks this Court to silence its critics.  But the Lanham Act is not a weapon to punish speech that, as here, contributes to public debate in a journalistic forum.  No amendment to the Complaint can cure this fundamental defect.  Given the First Amendment chill imposed by meritless attacks on protected commentary, this Court should dismiss with prejudice.  *See, e.g.*, *Croton Watch Co.*, 2006 WL 2254818, at *10 n.10 (substantive Lanham Act pleading deficiencies could not be cured by amendment); *Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam) (amendment would have been futile because "the advertisement was not a factual representation and therefore not actionable").

Because the allegations in the Complaint are without basis in fact or law, and target speech in a public forum on an issue of public interest, dismissal with prejudice is only the first step. The allegations here are not simply frivolous. They threaten real-world harm against core First Amendment speech. Plaintiff has shown a disregard for settled law, and attempted a substantial and dangerous overreach, in trying to shoehorn protected speech into liability for false commercial advertising. That effort involves a willfully misleading presentation of Galaxy's actual speech in an effort to silence commentary that exposed Plaintiff's connection to potential wrongdoing. This Court should therefore award Galaxy its attorney's fees as provided by the Lanham Act and New York's Anti-SLAPP Law. *See 4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202, 215 (2d Cir. 2019) (Lanham Act allows attorney's fees award to a prevailing party in "exceptional cases" under 15 U.S.C. §1117(a)); N.Y. Civ. Rights Law §70-a; *Heilbut v. Cassava Scis.*, 778 F.Supp.3d 551, 557 (S.D.N.Y. 2025).[8]

---

[8] In *Bobulinski v. Tarlov*, 758 F.Supp.3d 166 (S.D.N.Y. 2024), the court held that the defendant was entitled to attorney's fees under Section 70-a(1) upon dismissing the defamation complaint and without requiring the defendant to file a separate action for fees. *Id.* at 189. As in *Bobulinski*, Galaxy can submit additional briefing and documentation in support of the fee request in the event the Court determines that Galaxy is entitled to fees. *See* Memorandum of Law in Support of Fee Award, *Bobulinski v. Tarlov*, No. 1:24-cv-2349 (S.D.N.Y. Dec. 20, 2024), Dkt.37.

## CONCLUSION

This Court should grant the motion to dismiss with prejudice and determine that Galaxy is entitled to recover its attorney's fees.

Respectfully submitted,

s/Danielle R. Sassoon
DANIELLE R. SASSOON
  *Counsel of Record*
JEFFREY C. THALHOFER
JULIA R. GRANT*
CLEMENT & MURPHY, PLLC
767 Fifth Avenue, 15th Floor
New York, NY 10153
danielle.sassoon@clementmurphy.com
*Supervised by a principal of the firm who
is a member of the New York bar

*Counsel for Galaxy Digital*

March 17, 2026

29

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This memorandum of law complies with the type-volume limitation of Local R. 7.1(c) because it contains 8,743 words, excluding the parts of the brief exempted by Local R. 7.1(c) as determined by the word counting feature of Microsoft Word 2016.

2. This memorandum of law complies with the typeface requirements of Local R. 7.1(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point font.

March 17, 2026

s/Danielle R. Sassoon
Danielle R. Sassoon

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 17, 2026, an electronic copy of the foregoing memorandum was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

<u>s/Danielle R. Sassoon</u>
Danielle R. Sassoon