UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SALOMON BROTHERS GROUP INC.,

                Plaintiff,

-against-

GALAXY DIGITAL INC.,

                Defendant.

Case No. 1:26-cv-00369 (JLR)

---

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**LEWIS & LIN, LLC**

David D. Lin, Esq.
Michael D. Cilento, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
David@iLawco.com
Michael@iLawco.com

*Attorneys for Plaintiff Salomon Brothers Group Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

LEGAL STANDARD............................................................................................................ 6

ARGUMENT .......................................................................................................................... 8

I.     The Complaint Plausibly Alleges That The Episode Constitutes Commercial
       Advertising Or Promotion ......................................................................................... 8

       A.    Galaxy's Conduct Was Proactive Commercial Promotion, Not Reactive
             Editorial Commentary........................................................................................ 9

       B.    The Episode Was Commercial in Subject, Purpose, and Effect ................... 10

       C.    Galaxy's Secondary Promotion of the Episode Independently Constitutes
             Commercial Advertising................................................................................... 11

       D.    The Complaint Plausibly Alleges Dissemination to the Relevant Purchasing
             Public, and Whether the Parties Compete Is a Factual Issue ....................... 12

II.    The Challenged Statements Are Actionable Under The Lanham Act As False Or
       Misleading Statements Of Fact............................................................................... 13

       A.    The Complaint Plausibly Alleges That the Statements Were False or
             Misleading and That Galaxy Knew It.............................................................. 14

       B.    The Complaint Plausibly Alleges That the Statements Were About Salomon
             and Made by Galaxy ......................................................................................... 17

III.   The Complaint Plausibly Alleges Injury And Causation ...................................... 20

       A.    The Complaint Plausibly Alleges Cognizable Commercial Injury............... 20

       B.    The Complaint Plausibly Alleges Proximate Causation................................ 21

IV.    Galaxy's Request For Fees Should Be Denied........................................................ 22

       A.    This Is Not an Exceptional Lanham Act Case ................................................ 23

       B.    Galaxy Has Shown No Basis for Anti-SLAPP Relief .................................... 23

CONCLUSION.................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*4 Pillar Dynasty LLC v. New York & Co.,*
  933 F.3d 202 (2d Cir. 2019)............................................................................... 23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................ 6

*BYD Co. v. VICE Media LLC,*
  531 F. Supp. 3d 810 (S.D.N.Y. 2021)............................................................... 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................ 6

*Bobulinski v. Tarlov,*
  758 F. Supp. 3d 166 (S.D.N.Y. 2024)............................................................... 23

*Bolger v. Youngs Drug Prods. Corp.,*
  463 U.S. 60 (1983)......................................................................................... 10

*Boule v. Hutton,*
  70 F. Supp. 2d 378 (S.D.N.Y. 1999), aff'd, 328 F.3d 84 (2d Cir. 2003) .................................... 9

*Boule v. Hutton,*
  328 F.3d 84 (2d Cir. 2003)................................................................................ 9

*Celle v. Filipino Reporter Enters., Inc.,*
  209 F.3d 163 (2d Cir. 2000).............................................................................. 18

*Condit v. Dunne,*
  317 F. Supp. 2d 344 (S.D.N.Y. 2004)................................................................. 19

*Connecticut Bar Ass'n v. United States,*
  620 F.3d 81 (2d Cir. 2010)................................................................................ 10

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.,*
  377 F. Supp. 3d 337 (S.D.N.Y. 2019)................................................................. 20

*Dfinity Found. v. N.Y. Times Co.,*
  702 F. Supp. 3d 167 (S.D.N.Y. 2023)........................................................ 11, 19, 20

ii

## Table of Authorities

*(continued)*

**Cases**                                                                                                                      **Page(s)**

*Diamond Resorts Int'l, Inc. v. Aaronson,*
   371 F. Supp. 3d 1088 (M.D. Fla. 2019)................................................................................ 22

*Edwards v. Nat'l Audubon Soc'y, Inc.,*
   556 F.2d 113 (2d Cir. 1977)................................................................................................ 19

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC,*
   194 F. Supp. 3d 263 (S.D.N.Y. 2016)................................................................................ 12

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
   314 F.3d 48 (2d Cir. 2002).......................................................................................... 7 8, 12

*Gmurzynska v. Hutton,*
   355 F.3d 206 (2d Cir. 2004)................................................................................................ 9

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,*
   859 F. Supp. 1521 (S.D.N.Y. 1994)............................................................................ 11, 12

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,*
   905 F. Supp. 169 (S.D.N.Y. 1995)................................................................................... 12

*Grifols, S.A. v. Yu,*
   No. 24-cv-07344, 2025 WL 1826611 (S.D.N.Y. July 2, 2025)........................................ 16

*Groden v. Random House, Inc.,*
   61 F.3d 1045 (2d Cir. 1995).............................................................................................. 17

*Heilbut v. Cassava Sciences, Inc.,*
   778 F. Supp. 3d 551 (S.D.N.Y. 2025)......................................................................... 23, 24

*Int'l Code Council, Inc. v. UpCodes Inc.,*
   43 F.4th 46 (2d Cir. 2022) ......................................................................................... passim

*John P. Villano Inc. v. CBS, Inc.,*
   176 F.R.D. 130 (S.D.N.Y. 1997) ....................................................................................... 7

*Khalil v. Fox Corp.,*
   630 F. Supp. 3d 568 (S.D.N.Y. 2022)............................................................................... 19

iii

## Table of Authorities
*(continued)*

**Cases**                                                                                               **Page(s)**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014)............................................................................................ 20, 22

*Merck Eprova AG v. Gnosis S.p.A.,*
    760 F.3d 247 (2d Cir. 2014)................................................................................. 16, 22

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990).................................................................................................. 17

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.,*
    880 F. Supp. 1005 (S.D.N.Y. 1994)................................................................. 7 12, 21

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.,*
    850 F.2d 904 (2d Cir. 1988)................................................................................ 14

*Rapaport v. Barstool Sports, Inc.,*
    No. 20-cv-8784, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021)............................... 17

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)..................................................................... 17

*Souza v. Exotic Island Enters., Inc.,*
    68 F.4th 99 (2d Cir. 2023) .................................................................................. 22

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007)............................................................................ 15, 16

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.,*
    516 F. Supp. 2d 270 (S.D.N.Y. 2007) ................................................................... 7

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................ 23
15 U.S.C. § 1125(a)(1)(B) ............................................................................ passim
N.Y. Civ. Rights Law § 70-a ........................................................................... 23, 24

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................ 7
Fed. R. Civ. P. 9(b) ............................................................................................ 7
Fed. R. Civ. P. 12(b)(6)................................................................................ 6, 15, 22

## PRELIMINARY STATEMENT

This case is not about Galaxy's ability to comment on Bitcoin, the "dusting" initiative, or market events generally. Salomon welcomes legitimate discussion of the digital-asset market, its own client initiatives, and broader industry developments – which is part of why it met with Galaxy extensively and answered Galaxy's inquiries in the first place. This case is about something much narrower and much more concrete: that, after spending weeks investigating Salomon and obtaining direct, detailed information confirming Salomon's corporate existence, operations, regulatory affiliation, and management pedigree, Galaxy used a branded podcast appearance and its own promotional channels to tell the market the opposite – to depict Salomon as a "phantom company," "defunct," implicated in "fraud," "fined and penalized," lacking legitimacy, and having no real connection to the Salomon Brothers legacy. The Complaint alleges that those statements were false or, at a minimum, misleading, that Galaxy knew the facts rendering them so, and that Galaxy used them to disparage a competitor in the institutional digital-asset market.

The pleaded facts make Galaxy's knowledge unmistakable. Galaxy did not speak from rumor or incomplete public information. Galaxy sent Salomon more than two dozen written questions, met for more than two hours with a senior Salomon executive, and received information confirming that Salomon was an active New York corporation, operated through an affiliated registered broker-dealer, maintained a Manhattan office, and was led by experienced Wall Street professionals, including former Salomon Brothers personnel. Galaxy then published a written report acknowledging those same core facts, including Salomon's corporate status, office, management, and affiliates. Having investigated Salomon firsthand and published a report consistent with those facts, Galaxy cannot plausibly recast its later contrary statements as innocent mistake, loose rhetoric, or protected opinion.

1

The Complaint also plausibly alleges that the Episode was commercial promotion, not mere commentary. Galaxy did not merely participate in neutral journalistic commentary. It put its own research analyst on a podcast branded with Galaxy's name, used that appearance to disseminate false and misleading statements about a direct competitor, and then promoted the Episode through its own channels to the same institutional market in which both firms operate. Nor was that messaging confined to the Episode itself. The Complaint alleges that, even before the podcast aired – and one day before the research report was released – a prospective institutional counterparty with ties to Galaxy backed away from a proposed transaction with Salomon. The reasonable inference is that Galaxy was already steering institutional market participants away from Salomon through the same false narrative it later amplified publicly through the Episode.

Galaxy's motion does not defeat those allegations; it tries to rewrite them. It asks the Court to ignore what the Complaint alleges Galaxy learned, what Galaxy later said anyway, how the Episode was branded and promoted, and how Salomon was harmed. It recasts a Galaxy-branded, Galaxy-promoted "deep dive" featuring Galaxy's own analyst as mere reactive journalism, and it tries to transform this case into a free-speech dispute about matters of public concern. But again, Salomon does not challenge Galaxy's ability to discuss Bitcoin, the dusting initiative, or the market generally. It challenges false and misleading statements about Salomon itself that the Complaint plausibly alleges were part of a deliberate effort to disparage a competitor and divert business. Galaxy's remaining arguments, as discussed herein, fare no better and are either contradicted by the Complaint's well-pleaded allegations or depend on disputed factual issues that cannot be resolved on a motion to dismiss.

For these reasons, and as set forth below, the motion should be denied in its entirety.

2

## FACTUAL BACKGROUND

### The Parties and the Market

Salomon is a New York corporation engaged in investment banking, advisory, and related financial services in the digital asset and blockchain sector. Compl. ¶¶ 1, 10. It maintains a physical office in Manhattan, operates domestically and internationally, and conducts securities transactions through an affiliated registered broker-dealer. *Id*. ¶ 10. Its leadership includes experienced financial professionals, including individuals associated with the legacy Salomon Brothers business, and Salomon acquired rights to the Salomon Brothers name and mark and rebuilt the firm in the digital-asset sector. *Id*. ¶¶ 10–12.

Galaxy is a large public company that offers trading, asset management, advisory, investment-banking, and research services to institutional clients in the digital asset and blockchain sector. *Id*. ¶¶ 1, 6. Galaxy and Salomon compete for overlapping institutional clients, counterparties, and mandates in the market for digital-asset and blockchain-related financial services. *Id*. ¶¶ 1, 16, 26. In fact, the Complaint alleges that at least one specific institutional counterparty with ties to Galaxy ceased consideration of a proposed transaction with Salomon, underscoring that Galaxy and Salomon were pursuing business within the same institutional ecosystem and competing for the same class of opportunities. *Id*. ¶ 17.

### Galaxy's Investigation and Pre-Podcast Knowledge

In 2025, Galaxy's research division investigated the Bitcoin "dusting" initiative involving a Salomon client. *Id*. ¶ 14. Salomon agreed to respond to Galaxy's inquiries and, over the course of several weeks, answered more than two dozen written questions concerning its corporate structure, business operations, history, and legitimacy. *Id*. ¶¶ 14–15. Salomon also agreed to an in-person meeting. On September 3, 2025, a senior Salomon executive met with Galaxy's research

team for more than two hours to discuss the initiative. *Id*. ¶ 15. The meeting included members of Galaxy's executive and research teams, including, on information and belief, the Senior Research Analyst who later appeared on the Episode on Galaxy's behalf and delivered the false and misleading statements. *Id*. Through these exchanges, Galaxy received information confirming, among other things, that Salomon was an active New York corporation, maintained a Manhattan office, operated through an affiliated broker-dealer, and was led by experienced Wall Street professionals, including former Salomon Brothers personnel. *Id*. ¶¶ 10, 12, 15.

Armed with information obtained through those exchanges, on October 8, 2025 Galaxy published a report titled *The Great Bitcoin Dusting: A "Salomon Brothers" Client Tries to Claim Dormant Wallets* (the "Research Report"). *Id*. ¶ 16. The Research Report identified Salomon as a New York-registered corporation with an office address, management, and affiliates. *Id*. Salomon has not objected to those statements in the Research Report because it regarded the descriptions as accurate. *Id*.

### The Episode and Galaxy's Promotion of It

Ten days later, on October 18, 2025, Galaxy Senior Research Analyst Zack Pokorny ("Pokorny") appeared as the featured guest on an episode of the *Bitcoin Season 2* podcast titled *Bitcoin Dusting Attack You Didn't Know About W/ Galaxy Digital* (the "Episode"). *Id*. ¶ 18. The Episode was presented and promoted as a further Galaxy "deep dive" into the dusting initiative and Salomon's role in it. *Id*. It identified Galaxy by name in the title and featured Pokorny in his professional capacity as a Galaxy research analyst, presenting his remarks as the product of Galaxy's investigation and expertise. *Id*. The Episode was disseminated through all major podcast platforms, including Spotify, Apple Podcasts, iHeartRadio, CastBox, and other platforms, and

4

Galaxy itself heavily promoted the Episode through its own social media and Galaxy-branded channels. *Id.* ¶ 23.

During the Episode, Pokorny made, endorsed, or advanced statements depicting Salomon as a "phantom company," "defunct," implicated in "fraud," "fined and penalized," lacking legitimacy, and having no real "connection" to the Salomon Brothers legacy. *Id.* ¶ 19; *see* ECF 18-2, Tr. 11:16–13:3.[1] When the host asked whether Salomon had "basically dissolved because . . . they were implicated in some sort of fraud," Pokorny responded: "Yeah, that is my understanding." *Id.*; *see* Tr. 12:5–9. He then added that Salomon had been "fined and penalized along some line" and had "got in some trouble." *Id.*; *see* Tr. 12:11–15. At the close of the Episode, the host directed listeners to "make sure to follow" the Galaxy Research team because they "put out some of the best reports." *Id.*; *see* Tr. 34:15–19.

Those statements were false when made. *Id.* 20. Salomon is not defunct; it has not been implicated in fraud or been fined or penalized by any regulator; it is an active New York corporation doing business in New York; lawfully acquired rights to the Salomon Brothers name and mark; and carries continuity of pedigree and founders from the legacy Salomon Brothers business into the digital-asset sector. *Id.* ¶¶ 10–13, 20–22.

**The Harm to Salomon**

Galaxy's false statements caused substantial injury by portraying Salomon as a sham entity associated with fraud and illegitimacy, thereby deterring institutional counterparties and clients from doing business with Salomon. *Id.* ¶¶ 26–27. Salomon suffered harm to its goodwill, loss of

---

[1] References to "Tr." refer to the certified transcript of the podcast episode filed as Exhibit B to the Declaration of Danielle R. Sassoon, ECF No. 18-2. Page and line references reflect the internal pagination of the transcript itself, not the page numbers generated by the CM/ECF system.

business opportunities, a decline in customer inquiries and leads, and costs incurred to counteract the false impressions created by Galaxy. *Id*. The injury is ongoing because the statements remain publicly accessible online. *Id*.

In addition, on October 7, 2025 – one day before Galaxy released the Research Report and eleven days before the Episode aired – a prospective institutional counterparty informed Salomon that it was ceasing consideration of a proposed transaction. *Id*. ¶ 17. That counterparty had a business relationship with Galaxy and operated in the same institutional digital-asset ecosystem in which Galaxy and Salomon compete. *Id*. The Complaint alleges that this timing, together with Galaxy's subsequent public statements, supports a plausible inference that Galaxy was disseminating the same false messaging about Salomon both privately and publicly. *Id*. ¶¶ 17, 26.

## LEGAL STANDARD

### Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not require detailed factual allegations or proof of the claim – it requires only factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The Court does not resolve factual disputes, choose among competing inferences, or credit a defendant's alternative narrative over the pleaded allegations. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022). Fact-specific questions – including questions of context, audience understanding, and causation – ordinarily cannot be resolved on the pleadings. *Id.*

6

While Galaxy gestures in a footnote toward Rule 9(b) (*see* ECF 17 ("MTD") at 16),[2] the stronger line of authority in this District applies Rule 8(a)'s notice-pleading standard to Lanham Act false-advertising claims, because false advertising, unlike common law fraud, requires no showing of fraudulent intent. *See John P. Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[A] claim of false advertising under [§ 1125] falls outside the ambit of [Rule 9(b)]."); *see Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F.Supp.2d 270, 287 (S.D.N.Y. 2007) (same). Even if Rule 9(b) applied, the Complaint satisfies it: it identifies the specific false statements, the speaker, the medium, the date, the audience, and the precise basis for falsity.

**Lanham Act § 43(a)(1)(B)**

Section 43(a)(1)(B) of the Lanham Act prohibits the use, in commercial advertising or promotion, of a false or misleading description or representation of fact that misrepresents the nature, characteristics, qualities, or commercial activities of any person. 15 U.S.C. § 1125(a)(1)(B). Statements qualify as "commercial advertising or promotion" when they constitute commercial speech made for the purpose of influencing consumers and disseminated sufficiently to the relevant purchasing public. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56–57 (2d Cir. 2002). Representations less formal than traditional advertising may satisfy this standard, and the relevant dissemination inquiry is calibrated to the size and composition of the relevant market. *See id.*; *see Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005, 1020 (S.D.N.Y. 1994). Whether specific conduct satisfies the commercial advertising or promotion requirement is a fact-intensive question that ordinarily should not be resolved on a motion to dismiss. *UpCodes*, 43 F.4th at 53.

---

[2] Except as noted with respect to the transcript, all references to page numbers of filed documents refer to the page numbers generated by the CM/ECF system.

## ARGUMENT

Galaxy's motion presents three merits challenges to liability.  It argues that the podcast statements were not made in commercial advertising or promotion, that the challenged statements are nonactionable opinion, and that Salomon has not plausibly alleged injury.  It also seeks fees under the Lanham Act and New York's anti-SLAPP statute.  Each contention fails.

The Complaint plausibly alleges that the Episode was commercial advertising or promotion, that the challenged statements are actionable facts rather than protected opinion, and that Galaxy's false statements caused concrete commercial injury to Salomon.  What unites all of Galaxy's arguments is the same fundamental defect: each asks the Court to resolve contested factual questions in Galaxy's favor at the pleading stage, ignoring allegations it must accept as true, and substituting Galaxy's own narrative for the one the Complaint plausibly alleges.

## I.     The Complaint Plausibly Alleges That The Episode Constitutes Commercial Advertising Or Promotion

Galaxy's principal argument is that the Episode was merely editorial speech and therefore falls outside the Lanham Act.  That characterization cannot be squared with the Complaint, which alleges a branded research report, a branded podcast appearance by Galaxy's own analyst presented as Galaxy's investigative findings, a closing call to follow Galaxy Research, and Galaxy's own post-publication amplification of the Episode to the same institutional market both parties serve. Taken together, those facts plausibly allege commercial advertising or promotion. *Fashion Boutique of Short Hills, Inc.,* 314 F.3d at 56–57 (holding that representations "less formal than those made as part of a classic advertising campaign may suffice" and that the "touchstone" of the inquiry is whether the conduct constitutes "an organized campaign to penetrate the relevant market").

8

A.      **Galaxy's Conduct Was Proactive Commercial Promotion, Not Reactive Editorial Commentary**

Galaxy's reliance on *Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003), and *Gmurzynska v. Hutton*, 355 F.3d 206 (2d Cir. 2004), misses the crucial feature of those cases: they involved responses to unsolicited media inquiries and reactive commentary on matters already being reported by third parties. The lower court in *Boule* emphasized – on a motion for summary judgment, after the development of a full factual record – that Section 43(a) does not extend to "a response to an unsolicited inquiry by a magazine reporter seeking comment on a topic of public concern," because the statute connotes "proactive, not merely reactive, communication." *Boule v. Hutton*, 70 F.Supp.2d 378, 393 (S.D.N.Y. 1999), *aff'd*, 328 F.3d 84 (2d Cir. 2003). The Complaint alleges the opposite of *Boule* and *Gmurzynska*. Galaxy published its own branded Research Report, sent its own analyst onto a podcast episode bearing Galaxy's name in the title, used the appearance to discuss Galaxy's own work product, and then promoted the Episode through Galaxy's own channels. Compl. ¶¶ 16, 18, 23–25. Galaxy did not respond to a journalist's inquiry. It initiated a content campaign, used the podcast as a distribution channel, and placed the result in front of its own commercial audience.

Galaxy's attempt to characterize the entire Episode as speech on a matter of broad "public concern" does not alter that conclusion. The issue is not whether Bitcoin, cryptocurrency, or the underlying dusting initiative can be discussed publicly. The issue is whether Galaxy used a commercial platform to communicate false and misleading facts about a competitor while promoting its own research brand and expertise. Galaxy's effort to analogize this case to commentary about the collapse of FTX or other indisputably public events conflates the underlying topic with the actionable statements actually challenged here.

9

B.        **The Episode Was Commercial in Subject, Purpose, and Effect**

The Lanham Act does not require a speaker to recite a price list or expressly propose a transaction.  Commercial speech also includes "expression related solely to the economic interests of the speaker and its audience."  *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 92 (2d Cir. 2010).  Under *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67 (1983), courts consider whether the speech functions as advertising, refers to specific products or services, and is economically motivated.  The Complaint plausibly alleges all three here.  Compl. ¶¶ 23–25.

The Episode was not merely commentary on a public issue untethered to Galaxy's business.  It concerned the activities of a direct competitor in the digital-asset financial-services market, showcased Galaxy Research's purported investigative capabilities, and was disseminated to the very audience both firms seek to influence – digital-asset investors, institutional counterparties, and other financial-market participants.  Compl. ¶¶ 1, 16, 23–25.  The Episode was distributed on major podcast platforms, including iHeartRadio, Spotify, and Apple Podcasts, and Galaxy further promoted it through Galaxy-branded and social-media channels.  *Id*. ¶ 23.  The Complaint further alleges that Galaxy used the Episode to present itself as a "reputable public company" while attacking Salomon's legitimacy, thereby using the same communication both to elevate Galaxy and to injure a competitor in the same market.  *Id*. ¶¶ 23, 25.  And the Episode ended with an express call to action: the host urged listeners to "make sure to follow" the Galaxy Research team because they "put out some of the best reports," directing the audience toward Galaxy's research brand and affiliated channels.  *See* Tr. 34:15–19; Compl. ¶ 24.

The Complaint also plausibly alleges economic motivation.  Galaxy's production of the Episode as a further "deep dive" into the dusting initiative and Salomon's role in it was not detached analysis; it was a way for Galaxy to signal to institutional market participants that Galaxy

10

possessed superior research and investigative capabilities as compared to firms like Salomon. Compl. ¶ 24. By presenting the Episode as part of Galaxy's official research output, and by featuring a Galaxy representative to enhance Galaxy's credibility with that audience, Galaxy used the Episode as a promotional vehicle for its own expertise and services. *Id*. ¶¶ 24–25. At the same time, the Complaint alleges that Galaxy's false claims about Salomon were intended to, and likely did, influence that same audience's perception of Salomon in a negative way. *Id*. ¶ 25. In other words, Galaxy used the Episode as commercial promotion to strengthen its own standing in the market while disparaging a competitor.

This distinguishes Galaxy's conduct from the editorial content courts have treated as protected. Courts protect original editorial content when it examines a matter of public concern and the primary purpose is not commercial promotion. *See Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1535–36 (S.D.N.Y. 1994). Galaxy, however, is not a news organization. It is a commercial competitor that published research and then sent its own analyst onto a branded podcast to present that research to the same institutional market Galaxy serves – and then amplified the result on its own platforms. Galaxy's further reliance on *Dfinity Foundation v. New York Times Co.*, 702 F.Supp.3d 167 (S.D.N.Y. 2023), is therefore misplaced on this point: *Dfinity* involved a news organization and a crypto-analysis firm publishing a report on a matter of public concern – neither was a commercial competitor using a podcast to promote its own research brand to a shared institutional market, and the commercial advertising element was not at issue in *Dfinity* at all.

### C.    Galaxy's Secondary Promotion of the Episode Independently Constitutes Commercial Advertising

Galaxy's subsequent use of the Episode as promotional content independently satisfies the commercial advertising or promotion requirement. In *Gordon & Breach*, the court drew this very

distinction – speech that may be editorial when first published becomes commercial when later deployed by the speaker to attract customers.  859 F.Supp. at 1544.  Indeed, in a subsequent decision in the same litigation, the court found Lanham Act liability where defendants distributed research reprints to targeted professional audiences, holding that such distribution was "precisely the type of promotional activity that the Lanham Act seeks to regulate" because it was directed at "the people that matter most under the Lanham Act – the consumers."  *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F.Supp. 169, 177–78 (S.D.N.Y. 1995).

The same promotional activity occurred here.  The Complaint alleges that after the Episode aired, Galaxy promoted it on its own social media and Galaxy-branded channels, kept it available through major podcast platforms, and used it to direct listeners toward Galaxy Research.  Compl. ¶¶ 23–25.  Those allegations plausibly describe secondary promotional use directed at the people who matter most under the Lanham Act – potential purchasers in the relevant market.  Thus, even if the Court were to conclude that the Episode's initial publication had some editorial character, Galaxy's subsequent use and promotion of the Episode as branded content independently satisfies the "commercial advertising or promotion" requirement.

### D.     The Complaint Plausibly Alleges Dissemination to the Relevant Purchasing Public, and Whether the Parties Compete Is a Factual Issue

Galaxy's dissemination argument uses the wrong denominator.  The question is not whether the statements reached the public at large, but whether they were "disseminated sufficiently to the relevant purchasing public."  *Fashion Boutique*, 314 F.3d at 57.  In a niche market, dissemination to a comparatively limited but targeted audience may suffice.  *See Mobius Mgmt. Sys., Inc.*, 880 F.Supp. at 1020 ("the level of circulation required to constitute advertising and promotion will undeniably vary from industry to industry and from case to case"); *see Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F.Supp.3d 263, 294–95 (S.D.N.Y. 2016) (finding

12

dissemination satisfied where defendant's systematic posts reached relevant users in the specific market at issue).

The Complaint identifies the relevant market as the institutional digital-asset and blockchain financial-services ecosystem. Compl. ¶¶ 1, 6, 16, 23, 26. It alleges podcast distribution through widely used platforms, Galaxy's own amplification through its institutional channels, and an overlap between the audience reached and the institutional audience to whom both firms market their services. *Id.* ¶¶ 18, 23–26. Galaxy's suggestion that the parties cannot share a market because Galaxy is a multi-billion-dollar public company is a factual dispute that cannot be resolved at this stage. The Complaint alleges precisely the kind of competitive overlap that establishes a relevant market: an institutional counterparty with a Galaxy relationship ceased consideration of a proposed transaction with Salomon in temporal proximity to Galaxy's campaign, *id.* ¶ 17, and the dusting initiative at the center of Galaxy's report and the Episode itself involved a Salomon client operating within the same institutional digital-asset ecosystem in which both firms compete. At the pleading stage, that is more than enough.

## II.    The Challenged Statements Are Actionable Under The Lanham Act As False Or Misleading Statements Of Fact

Galaxy argues that the challenged statements are nonactionable opinions, that some were not about Salomon, and that others were made by podcast hosts rather than by Galaxy. None of those arguments supports dismissal. The Lanham Act inquiry is not coextensive with New York defamation doctrine. Section 43(a)(1)(B) reaches false or misleading factual messages in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). The Complaint plausibly alleges that: (1) the challenged statements were false or at minimum misleading, and Galaxy knew it; and (2) the statements were made by Galaxy or expressly adopted by its analyst, and a reasonable listener would understand them as referring to Salomon.

13

While Galaxy's motion also labels the statements as "irrelevant," it *does* not develop that point, nor does it actually challenge materiality as an independent element. See MTD at 26, 31. That omission is unsurprising. Statements that a financial-services firm is fake, defunct, fraudulent, fined and penalized, and lacking legitimacy go directly to whether institutional clients and counterparties will trust the firm. Materiality, in any event, is a fact-intensive question that "cannot be determined on consideration of a motion to dismiss." *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 917 (2d Cir. 1988); *see also UpCodes*, 43 F.4th at 63–64 (reversing dismissal on materiality because plaintiffs "should be given the opportunity to develop their evidence" and the question of whether consumers construed a statement as material "cannot be determined on consideration of a motion to dismiss" (quoting *Ayerst*, 850 F.2d at 917)).

### A. The Complaint Plausibly Alleges That the Statements Were False or Misleading and That Galaxy Knew It

Many of the challenged statements are directly and literally false as alleged. Salomon is not "defunct." It is not a "phantom company." It has not been implicated in fraud and has not been fined or penalized by any regulator. Compl. ¶¶ 10–13, 20–22. It is an active New York corporation with a Manhattan office, an affiliated registered broker-dealer, and a leadership team that includes former Salomon Brothers personnel. *Id*. ¶¶ 10, 12. And the Complaint alleges that Salomon does maintain a connection to the Salomon Brothers legacy through its acquisition of rights to the name and the backgrounds of its principals. *Id*. ¶ 12.

At a minimum, the Complaint plausibly alleges that the Episode conveyed a false or misleading factual message about Salomon's existence, legitimacy, pedigree, and regulatory history. The Lanham Act reaches not only facially false assertions but also misleading factual implications. A court "evaluating whether an advertisement is literally false must analyze the message conveyed in full context, *i.e.*, it must consider the advertisement in its entirety and not

14

engage in disputatious dissection." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (internal quotation marks and citations omitted).  Galaxy therefore misses the mark when it treats the issue as whether every challenged phrase, viewed in isolation and under defamation doctrine, can be labeled literally false.  Under the Lanham Act, the relevant inquiry is the message conveyed in context, and the Complaint plausibly alleges that the Episode conveyed a false and damaging message about Salomon's legitimacy, pedigree, and regulatory history.

And even if the Court were to conclude that any particular phrase was not literally false when viewed in isolation, the Complaint independently pleads implied falsity.  The Episode's cumulative message – that Salomon is not a legitimate company, is defunct, and was involved in fraud – left an impression on listeners that "'conflicts with reality.'"  *UpCodes*, 43 F.4th at 65 (quoting *Time Warner Cable*, 497 F.3d at 153).  That is sufficient to plead implied falsity.  The falsity of such a message is typically "demonstrated through extrinsic evidence of consumer confusion or through evidence of the defendant's deliberate deception."  *Id*.  Either path defeats dismissal.  If extrinsic evidence is needed, the inquiry is factual and has no place on a Rule 12(b)(6) motion; and if deliberate deception is shown, a rebuttable presumption of consumer confusion arises.  *Id*.  Galaxy's own characterization of the statements as "vague and imprecise" only reinforces the point: to the extent the challenged statements are ambiguous rather than literally false, the Complaint still plausibly alleges that they conveyed a misleading commercial message, and the effect of that message on the relevant audience is a factual question not suitable for resolution on a Rule 12(b)(6) motion. *See* MTD at 22.

Indeed, the Complaint also plausibly alleges that Galaxy knew the statements were false or misleading when made –  and that is precisely what makes this case different from every opinion case Galaxy cites.  Galaxy sent Salomon more than two dozen written questions, met with a senior

Salomon executive for more than two hours, received information confirming Salomon's active corporate status, broker-dealer affiliation, and management pedigree, and then published a written report acknowledging those same core facts just ten days before the Episode aired. Compl. ¶¶ 14–16. This is not a case in which Galaxy lacked access to the relevant facts or was drawing inferences from public materials. The Complaint alleges that Galaxy had contrary facts in hand – facts Galaxy itself had gathered, confirmed, and published – and nonetheless told the market the opposite. Where deliberate deception is plausibly alleged, courts may presume consumer impact and competitive injury without extrinsic evidence. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259–60 (2d Cir. 2014); *see Time Warner*, 497 F.3d at 153 (deliberate deception "creates a rebuttable presumption of consumer confusion").

Nor do Galaxy's opinion cases warrant dismissal. Courts protect loose evaluative rhetoric when the surrounding context signals speculation, hyperbole, or disclosed inference – for example, where the speaker has included extensive disclaimers, disclosed a financial conflict of interest, and flagged the conclusions as speculative inferences from disclosed sources. *See Grifols, S.A. v. Yu*, 2025 WL 1826611, at *11–13 (S.D.N.Y. July 2, 2025) (short-seller report protected as opinion where it contained extensive disclaimer language, disclosed author's short position, and stated conclusions as inferences from cited public sources). None of those protective features existed here. Pokorny appeared as Galaxy's Senior Research Analyst delivering the findings of a Galaxy "deep dive." There were no disclaimers, no disclosed financial positions, no conditional language, and no signal that his statements were speculative inferences rather than the factual conclusions of Galaxy's investigation. Determining whether statements like these convey actionable facts or protected opinion "requires a factual inquiry" and "typically should not be resolved on a motion to dismiss." *UpCodes*, 43 F.4th at 60.

16

In this context, accusations that a firm is fraudulent, penalized, fake, and defunct convey factual content. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1051–52 (2d Cir. 1995) (whether a statement "could reasonably be seen as stating or implying provable facts" determines actionability); *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990) (statement framed as opinion remains actionable if it "implies an assertion of objective fact"); *see Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F.Supp.3d 705, 722 (S.D.N.Y. 2014) ("[A]ccusations of criminal or unethical activity … are expressions of fact, as are allegations relating to one's professional integrity that are susceptible of proof" (internal quotation omitted)).

Galaxy's reliance on *Rapaport v. Barstool Sports*, 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021), is similarly misplaced. *Rapaport* is not a Lanham Act case. It is a breach-of-contract and employment dispute; the language Galaxy quotes about "free-wheeling" forums appears in a defamation analysis under New York law – a distinct doctrine with distinct standards and no bearing on whether a professional researcher's statements on a branded podcast constitute false statements of fact in commercial advertising under the Lanham Act.

B.    **The Complaint Plausibly Alleges That the Statements Were About Salomon and Made by Galaxy**

Many of the statements were plainly about the "current" Salomon, not some abstract predecessor. The conversation was triggered by the host's question of whether "Salomon Brothers" is "a real company" and what "the new Salomon Brothers" is. Tr. 10:6–8, 10:21–11:1. Pokorny then described Salomon as "merely just like a phantom company" with "no direct connection" to the original firm. Tr. 11:16–21. The Complaint plainly alleges that those statements referred to the present Plaintiff. Compl. ¶¶ 18–22.

17

Ultimately, Galaxy's "legacy versus current" theory is simply a construct designed for this motion. The transcript does not maintain the clean separation Galaxy now posits. Discussion of fraud, penalties, defunct status, and lack of legitimacy flowed directly from the discussion of the current Salomon without any meaningful contextual break. At minimum, the Episode is susceptible to multiple reasonable interpretations. Where challenged statements are susceptible of multiple meanings, the question of what a reasonable listener would understand is not resolvable as a matter of law on a motion to dismiss. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) ("where challenged statements are susceptible of multiple meanings, some of which are not defamatory, the court may not conclude as a matter of law that the statements are or are not defamatory"); *BYD Co. v. VICE Media LLC*, 531 F.Supp.3d 810, 819 (S.D.N.Y. 2021) (at the pleading stage, court must decide only "whether statements, considered in the context of the entire publication, are reasonably susceptible of [the claimed] connotation such that the issue is worthy of submission to a jury"). That question defeats dismissal.

Galaxy is equally wrong to argue that the statements cannot be attributed to it because some words were spoken first by the host. First, where Pokorny made statements himself – including his characterization of Salomon as "merely just like a phantom company" with "no direct connection" to the original firm, Tr. 11:16–21 – those statements are unambiguously attributable to a Galaxy employee speaking in his professional capacity. Second, where statements were made by the host, Pokorny expressly adopted them. For example, when a host stated that Salomon Brothers had "basically dissolved" after being "implicated in some sort of fraud," Pokorny responded: "Yeah, that is my understanding" (*id*. 12:5–9), and then he elaborated that Salomon Brothers had been "fined and penalized along some line" and had "got in some trouble." *Id*. 12:11–15. A defendant who "espoused and concurred in the charges" cannot disclaim attribution by

pointing to the original speaker.  *Khalil v. Fox Corp.*, 630 F.Supp.3d 568, 580 (S.D.N.Y. 2022) (holding corporation liable for defamatory statements made by its employee acting within the scope of authority where the employee "espoused and concurred" in the challenged characterizations).  The Second Circuit recognized the adoption principle in *Edwards v. National Audubon Soc'y, Inc.*, 556 F.2d 113, 120 (2d Cir. 1977), holding that a publisher who "in fact espouses or concurs in charges made by others … assumes responsibility for the underlying accusations."  Courts have applied that principle in broadcast contexts: where a defendant's representative "concurred in the allegations he reported," attribution follows.  *Condit v. Dunne*, 317 F.Supp.2d 344, 362 (S.D.N.Y. 2004) (finding attribution satisfied where defendant participated in the interview, was present for all exchanges, and elaborated on challenged statements without correction or qualification).  Pokorny's "Yeah, that is my understanding," followed by his own elaboration, is textbook adoption.

Nor can Galaxy escape responsibility by parsing the Episode at an artificially granular level.  The Episode was a single communicative event in which Galaxy's featured representative discussed Salomon, Galaxy's research, and Galaxy's investigation throughout.  The Complaint plausibly alleges that the false or misleading factual message communicated in that event was delivered by Galaxy about Salomon.  That is enough at the pleading stage.

The *Dfinity* case Galaxy invokes does not support its attribution or opinion arguments. *Dfinity* was a defamation case under New York law – not a Lanham Act commercial advertising case.  Its opinion analysis rested on three features Galaxy's podcast entirely lacked: (1) Arkham's report was laden with cautionary language "signal[ing] to a reasonable reader that Arkham was expressing opinion, not fact," and Arkham "named their publicly available sources and included links to those sources throughout the Report" (*Dfinity*, 702 F.Supp.3d at 176) – Galaxy's podcast

19

had none of those features; (2) the *Dfinity* plaintiff "challenge[d] the inferences drawn from the facts cited in the Arkham Report, rather than the facts themselves," and "the veracity of those facts are not substantively in dispute" (*id.*) – here, Salomon challenges the facts themselves, which are affirmatively false; and (3) Arkham was not a commercial competitor of Dfinity – there was no shared institutional market and no commercial promotional purpose, as plainly alleged here. *Dfinity* does not in any way control this case.

**III.     The Complaint Plausibly Alleges Injury And Causation**

Galaxy's third challenge fares no better.  Under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), a Lanham Act plaintiff must plausibly allege injury to a commercial interest in reputation or sales proximately caused by the defendant's misrepresentations.  The Complaint does exactly that.

**A.     The Complaint Plausibly Alleges Cognizable Commercial Injury**

The Complaint alleges classic forms of commercial injury: harm to goodwill, reputational injury in the institutional digital-asset market, lost business opportunities, a decline in inquiries and leads, and costs incurred to counteract the false impressions created by Galaxy's statements. Compl. ¶¶ 26–27.  Those are recognized forms of injury under the Lanham Act.  *See Lexmark*, 572 U.S. at 131–32 (holding that a plaintiff need only allege injury to a "commercial interest in reputation or sales"); *see Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F.Supp.3d 337, 346 (S.D.N.Y. 2019) ("Under the Lanham Act, injury is typically demonstrated where a plaintiff can demonstrate harm to its 'commercial interest in reputation or sales.'" (quoting *Lexmark*, 572 U.S. at 132)).  The Complaint also alleges the loss of at least one specific prospective business transaction – the October 7 counterparty – in temporal proximity to Galaxy's campaign.  Compl. ¶¶ 17, 26.  That is a paradigmatic form of competitive injury.

20

The nature of the challenged statements underscores why those injuries are plausible. False statements that a financial services firm is fake, defunct, implicated in fraud, fined and penalized, or otherwise lacking legitimacy strike at the core of what matters in a trust-based institutional market. Reputational injury and loss of business opportunities are not speculative side effects in that setting; they are the predictable commercial consequences of the message alleged. *See Mobius*, 880 F.Supp. at 1022–23 (rejecting argument that lost sales are a prerequisite to damages; goodwill harm and loss of client trust sufficed).

**B.        The Complaint Plausibly Alleges Proximate Causation**

The Complaint also plausibly alleges a direct causal relationship between Galaxy's statements and Salomon's injury. It alleges that Galaxy and Salomon compete for overlapping institutional clients; that Galaxy communicated false and misleading statements about Salomon to that same institutional audience; and that Salomon then suffered loss of opportunity, decline in leads, and damage to goodwill. Compl. ¶¶ 1, 6, 17, 18, 23–27.

The October 7 counterparty allegation reinforces the plausibility of the causal chain. One day before Galaxy publicly released the Research Report, a prospective institutional counterparty with a Galaxy relationship ceased consideration of a proposed transaction with Salomon. Compl. ¶ 17. That timing plausibly suggests that Galaxy's messaging about Salomon was already reaching institutional market participants before the public release – and the false statements made publicly on the Episode eleven days later plausibly reflected and amplified the same theme. The reasonable inference is that Galaxy was using both private and public channels to steer the same institutional ecosystem away from Salomon.

21

Galaxy insists that any harm must have been caused by the underlying dusting incident itself, not by its false statements. But the Complaint alleges that Salomon did not object to the Research Report, Compl. ¶ 16, precisely because the Report did not include the false characterizations the podcast delivered. The harm arose from the podcast's additional accusations – made after Galaxy had confirmed the contrary facts and published a consistent report – that Salomon was fraudulent, defunct, and fake. The Court does not choose between competing causal narratives on a Rule 12(b)(6) motion. *See Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F.Supp.3d 1088, 1115 (M.D. Fla. 2019) (causation under the Lanham Act need not be the sole or predominant cause of injury; causal connection may be demonstrated circumstantially at the pleading stage).

Furthermore, where deliberate deception is plausibly alleged in a competitive market, courts may presume injury without requiring plaintiff to plead discovery-level detail about which market participants heard which statements through which channels. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 259–60 (2d Cir. 2014) (in a competitive market with proven deliberate deception, courts may presume injury to the plaintiff's commercial interests); *see Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023) (confirming that *Merck Eprova* framework survives *Lexmark*). The Complaint's allegations of direct competition, targeted dissemination, temporal proximity, concrete business harm, and ongoing reputational injury are more than sufficient under Rule 8.

## IV.        Galaxy's Request For Fees Should Be Denied

Galaxy's request for fees only underscores the overreach of its motion. This case is not "exceptional" under the Lanham Act, and Galaxy's anti-SLAPP theories do not support dismissal or fee shifting.

## A.      This Is Not an Exceptional Lanham Act Case

The Lanham Act authorizes attorney's fees only in "exceptional cases." 15 U.S.C. § 1117(a). A case is exceptional when a litigating position stands out as unusually weak or the manner of litigation is otherwise unreasonable. *4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202, 215 (2d Cir. 2019) (holding that a case is "exceptional" under § 1117(a) only when the opposing party's litigation position "stands out from others with respect to the substantive strength of its litigation position" or the unreasonableness of its conduct). This case is nothing of the sort. Salomon alleges that Galaxy investigated Salomon, obtained information confirming Salomon's legitimacy, published a report reflecting those facts, and then had its analyst say the opposite on a Galaxy-branded podcast used to promote Galaxy Research. Whatever the ultimate outcome, that claim has an obvious factual and legal basis.

## B.      Galaxy Has Shown No Basis for Anti-SLAPP Relief

Galaxy's invocation of New York Civil Rights Law § 70-a fails as well. Section 70-a does not provide a basis for dismissal of a federal Lanham Act claim or for awarding fees in a federal-question action. The authorities applying § 70-a in federal court have done so under the Erie doctrine in cases involving state-law causes of action in diversity or supplemental-jurisdiction settings. *See Heilbut v. Cassava Sciences, Inc.*, 778 F.Supp.3d 551, 566–68 (S.D.N.Y. 2025) (conducting Erie analysis and holding that § 70-a's fee-shifting provision applies in federal court as substantive law under *Erie*, in a case where plaintiffs brought § 70-a as an affirmative claim after a prior state-law defamation action had been filed against them and dismissed); *see Bobulinski v. Tarlov*, 758 F.Supp.3d 166 (S.D.N.Y. 2024) (same Erie analysis in diversity case). This case arises under federal-question jurisdiction pursuant to the Lanham Act. There is no diversity, no Erie question, and no mechanism by which § 70-a reaches a federal Lanham Act plaintiff. Galaxy

cites no authority applying § 70-a as a fee-shifting mechanism against a plaintiff asserting a federal Lanham Act claim in a federal-question case.

*Heilbut* does not support Galaxy's position on its own terms.  In *Heilbut*, the plaintiffs were former defendants in a prior state-law defamation suit that had been filed against them and then dismissed – they were affirmatively asserting § 70-a as their own cause of action for relief, which is the precise statutory posture § 70-a was designed for.  *See Heilbut*, 778 F.Supp.3d at 557–58.  Galaxy's posture here is the opposite: it is a Lanham Act defendant attempting to use § 70-a offensively against a federal plaintiff who brought no state-law claim.  Nothing in *Heilbut* supports that use of the statute.

In any event, § 70-a(1)(a) authorizes fees only where the action "was commenced or continued without a substantial basis in fact and law."  N.Y. Civ. Rights Law § 70-a(1)(a).  That standard is plainly not met.  Salomon relies on Galaxy's own investigation, Galaxy's own report, Galaxy's own analyst, Galaxy's own promotional use of the Episode, and concrete allegations of injury in a shared market.  This is not a strategic lawsuit against public participation.  It is a conventional false-advertising case between market competitors.  Calling it a SLAPP does not make it one.

24

**<u>CONCLUSION</u>**

For the foregoing reasons, Galaxy's motion to dismiss should be denied in its entirety.  The Complaint plausibly alleges that Galaxy used a branded research report, a Galaxy-branded podcast appearance by its own analyst, and subsequent promotion of the Episode as part of a coordinated commercial effort directed to the institutional market in which Galaxy and Salomon compete.  It plausibly alleges that the challenged statements were false or misleading statements of fact, that Galaxy knew the contrary facts when the statements were made, and that those statements caused concrete commercial injury to Salomon.  Galaxy's request for fees should likewise be denied.  Finally, if the Court concludes that any aspect of the Complaint would benefit from further clarification, Salomon respectfully submits that the proper course is to permit amendment rather than dismissal.

Dated:  March 30, 2026
      Brooklyn, New York

                       Respectfully submitted,

                       **LEWIS & LIN, LLC**

                 By:  *Michael Cilento*
                     Michael D. Cilento (Bar. No. MC2221)
                     David D. Lin (Bar. No. DL3666)
                     77 Sands Street, 6th Floor
                     Brooklyn, NY 11201
                     Tel: (718) 243-9323
                     Fax: (718) 243-9326
                     Michael@iLawco.com
                     David@iLawco.com

                     *Attorneys for Plaintiff Salomon Brothers Group Inc.*

25

**CERTIFICATE OF WORD COUNT AND FORMATTING COMPLIANCE**

I, Michael D. Cilento, hereby certify that this memorandum of law complies with Rule 7.1(b) and (c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 3(C) of the Individual Rules of Practice in Civil Cases of Hon. Jennifer L. Rochon. Based on the word-count function of Microsoft Word, the memorandum contains 7,299 words, excluding the caption, prefatory tables, and signature blocks.

Dated:  March 30, 2026
       Brooklyn, New York

                                 */s/ Michael Cilento*
                                 Michael D. Cilento, Esq.

26